2008 UT App 476

RJW MEDIA, INC., a Texas corporation, Plaintiff, Appellant, and Cross-appellee,

v.

The CIT GROUP/CONSUMER FINANCE, INC.; Westland Title Insurance Agency, Inc., dba Lincoln Title Insurance Agency; and First Southwestern Title Agency of Utah, Inc., Defendants, Appellees, and Cross-appellants.

No. 20070423–CA.

Court of Appeals of Utah.

Dec. 26, 2008.

Joseph E. Wrona, Bastiaan K. Coebergh, and Tyler S. Foutz, Park City, for Appellant and Cross-appellee.

Dana T. Farmer, Ogden; and Mark S. Middlemas, South Jordan, for Appellees and Cross-appellants.

Before Judges THORNE, BENCH, and DAVIS.

## OPINION

THORNE, Associate Presiding Judge:

¶ 1 RJW Media, Inc. (RJW) appeals the trial court's grant of summary judgment in favor of First Southwestern Title Agency of Utah, Inc. (FSWT) and dismissal of RJW's breach of duty claim. RJW argues that the court erred in that FSWT breached its duty as trustee to RJW by recording a Notice of Cancellation at the instruction of a former beneficiary without obtaining authorization from RJW and without ensuring that the underlying debt had been paid and the default cured. RJW also appeals the trial court's grant of summary judgment in favor of The CIT Group/Consumer Finance, Inc. (CIT) and dismissal of RJW's slander of title claim. RJW argues that the court erred in concluding that RJW could not establish the malice element of its slander of title claim.

¶ 2 CIT cross-appeals the trial court's order granting summary judgment in favor of RJW concluding that CIT is equitably estopped from challenging the validity of the sale since the undisputed facts show that CIT had actual notice of RJW's trustee's sale but nonetheless chose to remain silent regarding an alleged procedural defect of the sale. CIT argues that it had no duty to act and that RJW's reliance on CIT's silence was unreasonable, and therefore the court erred in ruling that RJW was equitably estopped from challenging the sale.

¶ 3 We affirm in part and reverse in part.

## BACKGROUND

¶ 4 On January 24, 2001, Alan J. Squires entered into a note and first position deed of trust in favor of IndyMac Bank, F.S.B. (IndyMac) to secure a loan on a residence in Park City. IndyMac assigned its interest to Deutsche Bank National Trust Company (Deutsche Bank). IndyMac remained the loan servicer and FSWT was named trustee of the IndyMac deed of trust.

¶ 5 On August 30, 2002, Squires entered into a note and second position deed of trust in favor of CIT. Squires defaulted on the IndyMac note, and on October 8, 2003, FSWT recorded a notice of default. On July 28, 2004, RJW purchased Squires's indebted-

ness to Deutsche Bank. Deutsche Bank's assignment of interest in the IndyMac deed to RJW was recorded in the Summit County Recorder's office on August 9, 2004. The Summit County Recorder's office mailed the original recorded assignment to RJW's attorneys. FSWT was not aware of the assignment and did not receive a copy of the recorded assignment.

¶ 6 On September 9, 2004, RJW obtained a title report indicating a notice of default. On September 22, 2004, FSWT unilaterally issued a notice of cancellation of default without notice to RJW. CIT discovered the notice of cancellation on November 9, 2004. Several days later, on November 12, 2004, RJW issued a notice of trustee's sale of the property which advised that the trustee's sale was scheduled for December 13, 2004.

¶ 7 On November 16 and 18, 2004, RJW's attorneys mailed a notice of trustee's sale to CIT. RJW included a letter with the notice stating that it was willing to purchase CIT's trust deed in advance of the trustee's sale. On December 13, 2004, RJW conducted the sale. CIT did not participate in the sale and RJW was the highest bidder. In April 2004, CIT recorded its own notice of default against the property. RJW requested that CIT remove the notice of default and insisted that CIT's interest in the property had been extinguished. CIT refused to remove the notice of default and noticed a trustee's sale.

¶ 8 On July 20, 2005, RJW filed a complaint against both CIT and FSWT. Regarding CIT, RJW raised a slander of title claim and alleged that it had a right to quiet title to the property. RJW's claim against FSWT raised both a slander of title and a breach of duty claim. RJW subsequently agreed to the dismissal of its slander of title claim against FSWT. On September 29, 2005, RJW obtained a temporary restraining order to prevent CIT from foreclosing its junior lien on the property. After discovery, RJW filed two motions for summary judgment one against CIT and the other against FSWT. Both CIT and FSWT filed cross-motions for summary judgment against RJW.

¶ 9 On September 18, 2006, the trial court conducted a hearing on the parties' motions for summary judgment. On September 22, 2006, the court entered its ruling and order granting RJW's motion for summary judgment against CIT and denying CIT's cross-motion for summary judgment. In so ruling, the court held: "because CIT acquiesced in the Trustee's Sale despite having actual notice of the Cancellation of Default and the opportunity to protect its interests in the property, CIT is estopped from asserting noncompliance with the statute based on the Cancellation of Default."

¶ 10 The court denied RJW's motion for summary judgment against FSWT concluding that there was

> nothing in the plain language of [Utah Code section 57–1–31] that showed that the legislature intended to provide a standard of care that requires a trustee who has instructions from a beneficiary to cancel a notice of default to take affirmative action to determine if the default has actually been cured.

The court granted FSWT's cross-motion for summary judgment, concluding that "[s]ince [FSWT] did not have notice that Deutsche Bank was no longer the beneficiary and the industry standard of care did not require [FSWT] to question Deutsche Bank's instructions or do an updated title search, [FSWT] did not breach its duty as a trustee as a matter of law."

¶ 11 RJW appeals the summary judgment in favor of FSWT. CIT cross-appeals the summary judgment in favor of RSW and against CIT.

## ISSUES AND STANDARD OF REVIEW

¶ 12 RJW argues that the trial court erred in granting FSWT's motion for summary judgment when it ruled that FSWT did not breach its duty as trustee by canceling the notice of default without first verifying that the default had in fact been cured. RJW also argues that the court erred in granting CIT's motion for summary judgment and determining that RJW could not establish the malice element of RJW's slander of title claim.

¶ 13 CIT argues, in its cross-appeal, that the court erred in granting RJW's motion for

summary judgment where it held that equitable estoppel barred CIT from challenging the validity of RJW's trustee sale.

¶ 14 "This court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 7, 184 P.3d 610 (internal quotation marks omitted).

## ANALYSIS

### I. RJW's Appeal Issues

**A. Grant of Summary Judgment in Favor of FSWT disposing of RJW's Breach of Duty Claim**

¶ 15 The summary judgment challenged here disposes of RJW's breach of duty claim against FSWT. By stipulation, the trial court applied *Wycalis v. Guardian Title of Utah*, 780 P.2d 821 (Utah Ct.App.1989), and treated RJW's breach of duty claim as a negligence claim. *See id.* at 825 (stating that a breach of duty claim by a beneficiary against a trustee should be treated as a negligence claim). Thus, we consider whether the court, in treating the claim as one of negligence, erred in granting summary judgment.

¶ 16 In reviewing summary judgment in negligence cases, "we are guided by the general judicial policy that favors a trial on the merits when there is some doubt as to the propriety of a summary judgment." *Sohm v. Dixie Eye Ctr.*, 2007 UT App 235, ¶ 13, 166 P.3d 614 (internal quotation marks omitted); *see also Wycalis*, 780 P.2d at 825 ("As a general proposition, summary judgment is inappropriate to resolve a negligence claim on its merits, and should be employed only in the most clear-cut case." (internal quotation marks omitted)). "[O]rdinarily, whether a defendant has breached the required standard of care is a question of fact for the jury." *Wycalis*, 780 P.2d at 825 (internal quotation marks omitted). "Accordingly, summary judgment is inappropriate unless the applicable standard of care is 'fixed by law' and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances." *Id.* (citations omitted).

¶ 17 RJW argues that the trial court erred in its conclusions regarding the applicable standard of care in the title industry. In its ruling, the court rejected RJW's argument that a fixed standard of care is established by Utah Code section 57–1–31. *See* Utah Code Ann. § 57–1–31 (Supp.2008). Instead the court relied on FSWT's uncontested evidence of the industry standard of care and concluded that FSWT had established that the applicable standard of care was fixed by law.

¶ 18 RJW argues that genuine issues of material fact exist as to the standard of care sufficient to defeat summary judgment. RJW asserts that Utah Code section 57–1–31 clearly establishes that the trustee has a duty to ensure that a default has been cured before issuing a notice of cancellation of default. *See id.* Utah Code section 57–1–31 provides, in pertinent part, as follows:

(1).... After the beneficiary or beneficiary's successor in interest has been paid and the default cured, the obligation and trust deed shall be reinstated as if no acceleration had occurred.

(2) If the default is cured and the trust deed reinstated in the manner provided in [s]ubsection (1), ... the trustee shall execute, acknowledge, and deliver a cancellation of the recorded notice of default under the trust deed; and any trustee who refuses to execute and record this cancellation within 30 days is liable to the person curing the default for all actual damages resulting from this refusal.

*Id.* The trial court disagreed with RJW's interpretation of the statute and instead concluded that there is nothing in the plain language of the statute that requires a trustee who has received instructions to cancel a notice of default from a beneficiary to take affirmative action to determine if the default has actually been cured.

¶ 19 The trial court explained that the statute is devoid of any language to indicate what steps, if any, a trustee must take to ensure that the default has been cured and, notably provides no penalty for a trustee who records a notice of cancellation where the

default has not been cured. The trial court further noted that the plain language of the statute makes it clear that a trustee has a duty to execute and record a cancellation of the recorded notice of default when the default has, in fact, been cured, and is liable under subsection (2) for refusing to record said notice. As a result, the court concluded that section 57–1–31 does not establish a fixed standard of care. We agree with the court's interpretation that the statute does not articulate a duty to verify that a claimed default has actually been cured and determine that the court did not err in concluding that the statute does not establish a fixed standard of care.

¶ 20 RJW next argues that the trial court erred in granting summary judgment on RJW's negligence claim since the court declined to find that the legislature had fixed a standard of care in section 57–1–31. RJW cites *Wycalis* and contends that the court's finding—that no fixed standard of care exists—renders the trial court's grant of summary judgment inappropriate. Indeed, "[i]t is true that the applicable standard of care in a given case may be established, as a matter of law, by legislative enactment or prior judicial decision." *Wycalis v. Guardian Title of Utah,* 780 P.2d 821, 825 (Utah Ct.App.1989). However, in cases involving industry standards where the applicable standard of care has yet to be established as a matter of law in Utah, "the standard must be established factually in the course of ultimate resolution of [the] case, with an emphasis on standard-of-care-in-the-industry evidence." *Id.* at 826.

¶ 21 In attempting to establish the standard of care in support of its motion for summary judgment, FSWT provided affidavit evidence that "[i]t is not the custom or practice for a trustee to obtain a title report before recording a Cancellation of Notice of Default or to question the authority of the purported beneficiary."[1] The trial court, in considering whether a genuine issue of material fact existed sufficient to deny FSWT's motion for summary judgment, observed that RJW did not dispute the affidavit evidence RJW provided regarding the industry standard of care,[2] nor did it provide evidence to support a different standard of care. Relying on the uncontested affidavit evidence establishing the standard of care in the title industry, the court concluded that because there was no dispute about the industry standard of care, there was "no need for the fact finder to determine the standard of care on this matter and it may properly be decided as a matter of law."

¶ 22 The trial court then ruled that FSWT satisfied its initial burden on summary judgment by demonstrating with affidavit evidence that no genuine issue of material fact existed regarding the industry standard of care. *See* Utah R. Civ. P. 56(c) ("The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

1. This standard was originally articulated in the undisputed material facts section in FSWT's motion for summary judgment. In response to this statement of fact, RJW responded, "Disputed, *insofar* as the Trust Deed Statute imposes a clear duty upon a trustee to ensure that the debt underlying a trust deed has been paid and the default cured prior to a trustee's issuance of a cancellation of notice of default." (Emphasis added.) The trial court found that "RJW apparently does not dispute that the custom or practice is not to question the authority of the purported beneficiary, but simply that the trust deed statute overrides the industry custom." RJW's trust deed duty argument was originally raised in its motion for summary judgment which the court rejected, finding

[t]here is simply nothing in the plain language of the statute showing that the legislature intended to provide a standard of care that re-

quires a trustee who has received instructions from a beneficiary to cancel a notice of default to take affirmative action to determine if the default has actually been cured.

2. The trial court identified two statements pertaining to the standard of care in the undisputed material facts section of FSWT's motion for summary judgment, as well as RJW's responses, that it considered in its determination that RJW did not dispute the standard of care FSWT articulated. Paragraph 15 of FSWT's statement of undisputed material facts stated that "[FSWT] did not obtain a title report before recording the [Cancellation of Default] because it is not an industry standard to do so." (Second alteration in original.) In reply, RJW responded "Undisputed." The second statement has been discussed in the previous footnote. *See supra* note 1.

moving party is entitled to a judgment as a matter of law."). Once FSWT satisfied its burden, the burden then shifted to RJW, the nonmoving party, who "may not rest upon the mere allegations or denials of the pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* R. 56(e).

¶ 23 Here, the court ruled that the standard of care, a factual question that generally makes summary judgment inappropriate, was undisputed. First, RJW agreed with FSWT's statements pertaining to the standard of care. *See supra* notes 1–2. Second, RJW's argument that the trust deed statute provides a duty, which would override the industry custom, was without merit. *See supra* ¶¶ 18–19. Finally, even if RJW did dispute the standard of care, it did not offer any evidence to support that dispute.

¶ 24 Because RJW materially agreed with FSWT's presentation of the applicable industry standard of care, did not otherwise dispute the standard, and did not offer evidence to demonstrate a breach of the articulated standard of care, we conclude that RJW did not meet its burden to present specific facts to demonstrate that there was a genuine issue for trial. As a result, the court did not err in relying on the uncontested affidavits FSWT provided regarding the standard of care.[3] Accordingly, the trial court did not err in granting FSWT's motion for summary judgment resulting in the dismissal of RJW's negligence claim. The undisputed facts before the court in summary judgment reflect compliance with the requirements established in the standard of care. Therefore, summary judgment is appropriate.

B. Grant of Summary Judgment in Favor of CIT disposing of RJW's Slander of Title Claim

■■■ ¶ 25 RJW argues that the trial court erred in granting CIT's motion for summary judgment on RJW's slander of title claim, concluding that no reasonable fact-finder could determine that CIT acted with malice. RJW asserts that the court's summary judgment ruling is error because a genuine issue of material fact exists regarding RJW's ability to prove that CIT acted with implied malice. "To prove slander of title, a claimant must [show] that (1) there was a publication of a slanderous statement disparaging [the] claimant's title, (2) the statement was false, (3) *the statement was made with malice,* and (4) the statement caused actual or special damages." *Spencer v. Pleasant View City,* 2003 UT App 379, ¶ 23, 80 P.3d 546 (emphasis added) (internal quotation marks omitted) (alterations in original). "Malice may be implied where a party knowingly and wrongfully records or publishes something untrue or spurious or which gives a false or misleading impression adverse to one's title under circumstances that it should reasonably foresee might result in damage to the owner of the property." *First Sec. Bank of Utah, N.A. v. Banberry Crossing,* 780 P.2d 1253, 1257 (Utah 1989).

¶ 26 RJW contends that, in this context, malice is implied since it is undisputed that CIT published a false statement when CIT filed its notice of default. RJW asserts that CIT's notice of default amounted to a false statement because CIT did not have a legal interest in the property at the time it filed its default notice. Conversely, CIT argues that it did not publish a false statement and asserts that RJW's trustee's sale did not eliminate CIT's legal interest in the property because the sale was carried out contrary to the express language of Utah Code section 57–1–24. *See* Utah Code Ann. § 57–1–24 (Supp.2008).

¶ 27 In order to determine whether the trial court erred in finding that no reasonable fact-finder could determine that CIT acted with malice—actual or implied—we consider,

---

3. RJW attempts to challenge, on appeal, the sufficiency of the affidavit evidence, arguing that the affidavits FSWT submitted do not qualify as expert witness evidence of an industry standard of care. "This issue was not properly preserved for appeal, and on appeal, [RJW] does not argue that plain error occurred or that exceptional circumstances exist." *State v. Johnson,* 2007 UT App 184, ¶ 23, 163 P.3d 695. Therefore, we do not address this issue. *See State v. Pinder,* 2005 UT 15, ¶ 45, 114 P.3d 551 ("Under ordinary circumstances, we will not consider an issue brought for the first time on appeal unless the trial court committed plain error or exceptional circumstances exist." (internal quotation marks omitted)).

as a preliminary matter, whether RJW conducted its trustee's sale in compliance with the statute. Of particular concern is whether FSWT's cancellation of the notice of default invalidated RJW's trustee's sale. If RJW's trustee's sale is void, CIT's junior interest may remain intact, and if so, CIT could properly file its own notice of default. As a holder of a legal interest, CIT would be entitled to sell its interest.

¶ 28 The statute makes clear that a trustee may not conduct a trustee's sale unless the trustee files a notice of default and waits the required three months before giving proper notice of sale. *See id.* (stating that the trustee's power of sale may not be exercised until at least three months has elapsed from the time the trustee files its notice of default and "after the lapse of at least three months the trustee shall give notice of sale").

> The purpose and effect of the notice of default provisions contained in [Utah Code section 57–1–24] is to afford a three-month period within which the obligation for which the trust property was conveyed as security may be reinstated. *The passage of said three-month period is a condition precedent to the sale of the property at trustee's sale.*

*McCarthy v. Lewis,* 615 P.2d 1256, 1259 (Utah 1980) (emphasis added).

¶ 29 If, during the three month window, the trust deed is reinstated in accordance with Utah Code section 57–1–31, "the trustee shall execute, acknowledge, and deliver a cancellation of the recorded notice of default under the trust deed." Utah Code Ann. § 57–1–31(2); *see also id.* § 57–1–21.5(1)(a)(ii) (Supp.2008) (establishing that trustee's duty to execute a cancellation of notice of default may not be delegated). The notice of cancellation, which is to be recorded and executed in substantially the form provided in section 57–1–31, purports to "cancel[ ] the notice of default," referencing specific information on the particular notice of

default being cancelled.[4] *See id.* § 57–1–31. Once the notice of default is cancelled the notice is deemed withdrawn and is no longer valid. Thus, in accordance with section 57–1–24, after cancellation of a notice of default pursuant to section 57–1–31, a trustee must file another notice of default, wait three months, file a notice of trustee's sale, and only then may the trustee proceed to sell the property. *See Nyman v. McDonald,* 966 P.2d 1210, 1213 (Utah Ct.App.1998) (" 'Reinstatement,' as it is used in section 57–1–31, is the curing of the default. In other words, the parties are returned to their former status as if the default had never occurred. If a trustor subsequently defaults the beneficiary must begin new foreclosure proceedings. It may not rely on the previous notice of default and declaration of acceleration." (citation omitted)).

■ ¶ 30 Here, FSWT unilaterally issued a notice of cancellation prior to RJW's trustee's sale. The sale, although occurring after a notice of trustee's sale, was conducted without the filing of a new notice of default and the passage of a new three-month period for redemption. A valid notice and passage of the three-month window for redemption are a condition precedent to a properly conducted trustee's sale of the property. Because a valid default notice was not effective for three months immediately prior to the trustee's sale, the trial court should have concluded that RJW's trustee's sale was void and CIT's junior interest in the property was not extinguished. Since CIT had a valid interest, its notice of default was not, without more, a false statement. Accordingly, we affirm the trial court's holding, albeit on different grounds, that no reasonable fact-finder could determine that CIT's notice of default constituted a false statement, a required element for a slander of title claim. Given our disposition of this issue, we do not consider RJW's other arguments related to its slander of title claim.[5]

---

4. The form provided in Utah Code section 57–1–31 includes, among other things, the date the notice of default was filed, where the notice was recorded, which trust deed the notice of default refers to, and the county the notice was filed. *See* Utah Code Ann. § 57–1–31 (Supp.2008).

5. RJW also argues that the trial court erred by refusing to view the evidence and inferences in a light most favorable to RJW and improperly took on the role of the trier of fact by deciding issues of credibility and intent without granting RJW the benefit of trial on those issues.

## II. CIT's Cross–Appeal Issue—Equitable Estoppel

¶ 31 CIT cross-appeals the trial court's order granting summary judgment in favor of RJW. The trial court concluded that the undisputed facts show that CIT, who had actual notice of RJW's trustee's sale, chose to remain silent regarding an alleged procedural defect of the sale and is therefore equitably estopped from challenging the validity of the sale. CIT argues, in pertinent part, that it did not have a duty to put RJW on notice of any trustee's sale defect and as such is not equitably estopped from challenging the validity of RJW's trustee's sale.

¶ 32 Whether equitable estoppel bars CIT from challenging the validity of RJW's trustee's sale "is a mixed question of law and fact." *State v. Hamilton*, 2003 UT 22, ¶ 33, 70 P.3d 111 (internal quotation marks omitted).

> When an issue involves a mixed question of [law and fact], we afford some measure of discretion to the [trial] court's application of the law. The measure of discretion afforded varies, however, according to the issue being reviewed. When reviewing a trial court's legal conclusions on the issue of estoppel, we afford the court broad discretion.

*Id.* (alterations in original) (internal quotation marks omitted). To prevail on an equitable estoppel claim, RJW must establish that (1) CIT made a statement, admission, act, *or failure to act inconsistent with a claim later asserted;* (2) RJW changed its position or took action in reliance on that statement, admission, act, or failure to act; and (3) RJW's reliance would operate to its detriment if the court allowed CIT to contradict or repudiate its earlier statement, admission, act, or failure to act. *See id.* ¶ 34 (listing elements of equitable estoppel).

¶ 33 The trial court determined that CIT acquiesced in the trustee's sale when it silently allowed the sale to take place despite having actual notice of the cancellation of default. The court concluded that because CIT acquiesced in RJW's trustee's sale it was estopped from asserting noncompliance with the statute based on the cancellation of default. Although the trial court is correct that failure to act can satisfy the first element of estoppel, we determine that CIT's silence does not, in this instance, act to bar it from challenging the validity of the trustee's sale. To begin, we note that RJW had the ability to obtain the same information it accuses CIT of purposefully keeping secret. Indeed, RJW had a particular interest in ensuring that the trustee's sale was conducted in full compliance with the statute. Given RJW's ability and its interest in the validity of the trustee's sale, its reliance on CIT's silence is simply not reasonable. Similarly, we determine that CIT had no duty to put RJW on notice of potential procedural defects in the trustee's sale. It is illogical to require CIT to inform RJW of possible trustee's sale defects, when RJW, the entity conducting the trustee's sale, neglected to conduct a title search to ensure that the proper filings were made.

¶ 34 Because CIT had no duty to inform RJW of a possible procedural defect, not only was it unreasonable for RJW to rely on CIT's silence, but CIT's silence cannot be construed as an inconsistent act sufficient to establish an equitable estoppel claim. As a result, we conclude that the trial court erred in concluding that because CIT acquiesced in the sale it was estopped from asserting noncompliance with the statute.

## CONCLUSION

¶ 35 The trial court considered the plain language of Utah Code section 57–1–31 and concluded that it did not establish a fixed standard of care in the title industry. Section 57–1–31 is devoid of any language to require a trustee to ensure that a default has been cured before issuing a notice of cancellation. Instead, the court ruled that the undisputed evidence demonstrated that a trustee had no duty to ensure that a default has been cured. RJW did not dispute, nor present evidence to dispute, the industry standard of care that FSWT articulated and supported with affidavit evidence. As a result, we find no error in the trial court's reliance on the undisputed affidavit evidence to establish a fixed standard of care in this case, and then concluding that no genuine issue of material fact existed establishing a breach of the standard of care sufficient to

avoid summary judgment on RJW's negligence claim.

¶ 36 FSWT, trustee of the first position deed of trust in favor of IndyMac, filed a cancellation of its previously filed notice of default, thereby invalidating the notice of default. RJW conducted its trustee sale without filing another notice of default required by Utah Code section 57–1–24. As such, the trustee's sale was void and CIT maintained a valid junior interest in the property when it filed its own notice of default. Because we agree with the trial court, albeit for different reasons, that no reasonable fact-finder could determine that CIT acted with malice, we affirm its decision to grant CIT's motion for summary judgment on RJW's slander of title claim.

¶ 37 Finally, equitable estoppel does not bar CIT from challenging the validity of RJW's trustee's sale. CIT had no duty to inform RJW of a possible procedural defect in the trustee's sale. As a result, CIT's silence is not inconsistent with its claim that the trustee's sale was invalid and void. Accordingly, we conclude that the trial court erred in ruling that CIT was equitably barred from challenging the trustee's sale.

¶ 38 WE CONCUR: RUSSELL W. BENCH and JAMES Z. DAVIS, Judges.