2016 UT App 113

## THE UTAH COURT OF APPEALS

SPRING GARDENS INC.,
*Appellant,*

*v.*

SECURITY TITLE INSURANCE AGENCY OF UTAH INC.,
*Appellee.*

Opinion
No. 20140932-CA
Filed May 26, 2016

Second District Court, Farmington Department
The Honorable David M. Connors
No. 090700494

L. Miles LeBaron and John A. Snow, Attorneys
for Appellant

Troy L. Booher, Clemens A. Landau, Paul M.
Halliday Jr., and Benjamin J. Mann, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
STEPHEN L. ROTH and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

ORME, Judge:

¶1      Spring Gardens Inc. appeals the district court's grant of summary judgment to Security Title Insurance Agency of Utah Inc. on a claim of negligence against Security Title and the

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

district court's denials of Spring Gardens' separate rule 56(f)[2] motion for additional time to conduct discovery and its rule 54(b) motion for reconsideration of the court's summary judgment decision. The instant case arises from the fact that Security Title did not record a trust deed securing a debt in favor of Spring Gardens. We affirm.

BACKGROUND

¶2     In 2006, Spring Gardens lent a substantial sum of money to Blaine and Jessie Johnson, secured by a first-position lien on a parcel of real property (the Burmester property). By March 7, 2008, the Johnsons still owed Spring Gardens approximately $85,000. Hoping to expedite repayment of the loan, on that day Spring Gardens signed a new agreement (1) requiring the Johnsons to pay the debt in full within thirty days and (2) subordinating Spring Gardens' first-position lien on the Burmester property to two other interests of record. This new agreement was further secured by a trust deed intended to be in a first-priority position on two additional parcels of real property (the Skull Valley property). After both parties signed the agreement and trust deed, Spring Gardens deposited the documents with Security Title.

¶3     A short time later, however, Spring Gardens, in lieu of closing on the new agreement, chose to accept a payment as consideration for its subordination on the Burmester property. No closing having occurred, Security Title never recorded the Skull Valley trust deed, meaning Spring Gardens had no recorded interest in the Skull Valley property. Security Title did, however, record the subordination of Spring Gardens' interest in the Burmester property. As a result, when the Johnsons

---

2. Rule 56 was reorganized effective May 1, 2016. The former rule 56(f) is now rule 56(d)(2). We refer in this opinion to the rule as written when the district court considered Spring Gardens' motion.

defaulted, Spring Gardens had no recorded interest in the Skull Valley property and its interest in the Burmester property was subordinated to recorded interests in favor of two other parties, whose combined claims exceeded the value of the property. Spring Gardens sued both the Johnsons and Security Title; the instant appeal concerns only the latter.

¶4    In its complaint, Spring Gardens repeatedly declared that a closing occurred and that Security Title therefore had a duty to record the Skull Valley trust deed. During discovery, Security Title sought various admissions from Spring Gardens that contradicted the facts as stated in Spring Gardens' complaint, including an admission that no closing actually occurred and that Security Title never received verbal or written instruction from Spring Gardens to record the trust deed. Because Spring Gardens never denied or otherwise responded to these requests, it was deemed to have admitted the truth of these statements. *See* Utah R. Civ. P. 36(b)(1). Security Title seized upon this opportunity to end the suit and moved for summary judgment on the ground that Spring Gardens' admissions refuted the factual predicate of its claim, i.e., because a closing did not occur and no instructions to nonetheless record were given, no duty to record could be triggered by the "closing" alleged in the complaint or on the basis of separate instructions.

¶5    In its opposition to summary judgment, Spring Gardens argued that Security Title was required to produce evidence establishing the appropriate standard of care and to further demonstrate that its conduct did not violate that standard. Spring Gardens also filed a rule 56(f) motion seeking additional time for further discovery and to consult industry experts. Although Spring Gardens also expressed an intent to file a motion to amend or withdraw its admissions, it never did. Security Title responded by reiterating its argument that the deemed-undisputed facts effectively foreclosed Spring Gardens' negligence claim as set forth in its complaint.

¶6    The district court agreed with Security Title that where a closing had not occurred and instructions to record had not been

given, Spring Gardens could not prove that Security Title had a duty to record as alleged in its complaint. Thus, the district court granted summary judgment to Security Title. The district court also denied Spring Gardens' rule 56(f) motion because Spring Gardens conducted no further discovery after Security Title filed its motion for summary judgment and because Spring Gardens presented no contrary evidence in opposing summary judgment.

¶7 Six months after summary judgment was granted to Security Title, Spring Gardens filed a motion for reconsideration. The motion included the new arguments that Security Title had a statutorily implied obligation to record the trust deed and that a course of dealing existed between Spring Gardens and Security Title prior to the incident in question in which Security Title had always recorded deeds without specific written instructions to do so. A motion to amend the complaint did not accompany the motion for reconsideration, even though the only claim set forth in the complaint was tied specifically to the closing allegedly superintended by Security Title.

¶8 After taking the matter under advisement, the district court issued a written decision in which it denied Spring Gardens' motion for reconsideration. The court explained that to the extent Spring Gardens was presenting new evidence, it had given the court no indication why such evidence could not have been produced in a timely fashion. Furthermore, the court determined that "given [Spring Gardens'] deemed admissions and Security Title's supporting affidavits, [Security Title had] no duty . . . as a matter of law." The court concluded, therefore, that no "manifest injustice [would] result [to Spring Gardens] absent reconsideration." The court also rejected Spring Gardens' argument that its failure to conduct any discovery between "the filing of Security Title's Motion for Summary Judgment and oral arguments" was not dilatory because it did not have sufficient time to peruse Security Title's affidavits. Instead, the court found that Spring Gardens "had approximately six months to conduct discovery and adduce material facts to preclude a grant of summary judgment in favor of Security Title," during the interval between the filing of and the hearing on Security Title's

motion for summary judgment. Finally, the court rejected Spring Gardens' argument that the issue of Security Title's duty was inadequately briefed by Security Title. Spring Gardens appeals.

ISSUES AND STANDARDS OF REVIEW

¶9     Spring Gardens challenges the district court's grant of summary judgment in favor of Security Title. "We review the district court's decision to grant summary judgment for correctness, granting no deference to the district court." *Commercial Real Estate Inv., LC v. Comcast of Utah II, Inc.*, 2012 UT 49, ¶ 14, 285 P.3d 1193 (citation and internal quotation marks omitted).

¶10     Spring Gardens also questions the district court's rejection of its motion for reconsideration of the district court's summary judgment decision and its rule 56(f) motion for additional time in which to conduct discovery. "We review a district court's decision to deny a motion to reconsider a summary judgment decision for an abuse of discretion." *Koerber v. Mismash*, 2015 UT App 237, ¶ 15, 359 P.3d 701. Similarly, "we review a trial court's decision to grant or deny a rule 56(f) motion under the abuse of discretion standard." *Crossland Sav. v. Hatch*, 877 P.2d 1241, 1243 (Utah 1994). Although "[o]ur case law demonstrates that to provide an adequate opportunity for discovery, the trial court should liberally grant rule 56(f) motions . . . , the trial court need not grant rule 56(f) motions that are dilatory or lacking in merit." *Id.* "Under [an abuse of discretion] standard, we will not reverse unless the decision exceeds the limits of reasonability." *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993).

ANALYSIS

¶11     Two roads were open to Security Title in its pursuit of summary judgment. First, it could have established the applicable standard of care and demonstrated that it satisfied the standard as a matter of law. *See, e.g.*, *RJW Media, Inc. v. CIT*

*Group/Consumer Fin., Inc.*, 2008 UT App 476, ¶¶ 21, 24, 202 P.3d 291 (explaining that a defendant presented evidence of the industry standard of care "in support of its motion for summary judgment" and affirming summary judgment on the ground that the plaintiff failed to dispute the defendant's evidence as to the applicable standard of care or "to offer evidence to demonstrate a breach of the articulated standard of care").[3] Or second, in the wake of Spring Gardens' admissions, Security Title could simply

---

3. Security Title tried to argue it both ways on appeal: it maintained its original contention concerning Spring Gardens' deemed admissions, even as it argued that the burden to establish the applicable standard of care and prove a breach of that standard of care rested on Spring Gardens. The latter point is not well taken. If a case proceeds to trial, the burden clearly rests on the party bringing an action or raising a claim to prove the elements of its claim, which in the instant case would include evidence of both the standard of care to which Security Title was expected to adhere and the breach of that standard. The same is not true at the summary judgment stage. *See Jones & Trevor Mktg. v. Lowry*, 2012 UT 39, ¶ 29, 284 P.3d 630 ("Generally, *the party moving for summary judgment* must make an initial showing that he is entitled to judgment and that there is no genuine issue of material fact that would preclude summary judgment in his favor.") (emphasis added); *Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600 ("A summary judgment movant, *on an issue where the nonmoving party will bear the burden of proof at trial*, may satisfy its burden on summary judgment by showing, by reference to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is no genuine issue of material fact.") (emphasis added) (citation and internal quotation marks omitted). Thus, we agree with Spring Gardens that the burden did not rest with it to establish the applicable standard of care in its response to a summary judgment motion that Security Title pursued on other grounds.

rely on those admissions as conclusively refuting the factual predicate of Spring Gardens' complaint. *See Dantine v. Shores*, 2011 UT App 392, ¶ 2, 266 P.3d 188 (per curiam) (upholding a district court's grant of summary judgment against plaintiffs where their failure to respond to requests for admissions resulted in deemed admissions that left "no material disputed facts" in the case).

¶12   According to Spring Gardens' original and never-amended complaint, Security Title had a duty to record the deed "following the closing." That Spring Gardens believed the duty to record was premised upon a closing having occurred—and that its negligence claim against Security Title was premised upon such a closing—is repeated several times within its complaint. But as Spring Gardens admitted by failing to deny Security Title's requested admissions, a closing never occurred.[4]

---

4. Even if true, as Spring Gardens claimed below, that the outcome of this case was skewed by "the technicality of deemed admissions," the text of rule 36 is quite clear: a "matter is admitted unless, within 28 days after service of the request, the responding party serves upon the requesting party a written response." Utah R. Civ. P. 36(b)(1). There is no question that Spring Gardens failed to respond to Security Title's request for admissions within twenty-eight days (or, indeed, ever). And while Spring Gardens indicated that it would, at some point, file a "Motion to Withdraw or Amend these Admissions," it never did, although it belatedly filed a motion for reconsideration— one that raised new arguments. "[T]rial courts are under no obligation to consider motions for reconsideration,'" *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 15, 163 P.3d 615, and while the district court recited that it "considered the parties' pleadings and arguments," its decision makes quite clear that it ruled against Spring Gardens because of its "dilatory" behavior rather than on the merits of its new arguments. And because the court elected to decide the motion for reconsideration on procedural rather than substantive grounds, Spring Gardens' new

(continued…)

A claim explicitly premised upon the existence of a fact later admitted not to exist by the party making the claim is a weak claim indeed. *See id.* ¶¶ 2, 5. Furthermore, Spring Gardens had months to amend its complaint or seek to withdraw the admissions in question, but it never did.

¶13    In sum, because of Spring Gardens' admissions that no closing occurred and that no instructions of any kind were given to Security Title directing it to record the trust deed, Security Title could not have a duty to record premised upon the occurrence of such a closing and the giving of such instructions. Accordingly, the district court properly granted summary judgment to Security Title. And under these circumstances, the district court did not abuse its discretion in denying Spring Gardens additional time for discovery because additional discovery time would have been of no benefit to Spring Gardens

_____

(…continued)

arguments were not preserved for appeal. *Cf. Burdick v. Horner Townsend & Kent, Inc.*, 2015 UT 8, ¶ 50, 345 P.3d 531 ("[I]f a trial court decides, in its discretion, to address the merits of a claim raised for the first time in a motion to reconsider, that claim is preserved[.]").

New appellate counsel for Spring Gardens raised several additional and interesting arguments during oral argument, such as whether Security Title had some lesser duty to notify Spring Gardens that it had not recorded the trust deed or at least to return the unrecorded trust deed to Spring Gardens after it became clear that a closing would not occur, which would have served as timely notice to Spring Gardens that its trust deed had not been recorded. We decline to address those arguments because they were not preserved—or even briefed. *See, e.g., Patterson v. Patterson*, 2011 UT 68, ¶ 17, 266 P.3d 828 (noting that Utah's appellate courts "have on countless occasions exercised [their] discretion to refuse to consider new issues, arguments, claims, or matters on appeal").

given its deemed admissions and because, in any event, Spring Gardens had not availed itself of the ample time it already had for discovery. And "the trial court need not grant rule 56(f) motions that are dilatory." *Crossland Sav. v. Hatch*, 877 P.2d 1241, 1243 (Utah 1994).

¶14    Spring Gardens never took appropriate steps to withdraw the admissions that refuted the central tenets of its claim against Security Title or to justify its dilatory actions during discovery. Absent such a withdrawal, the introduction of contrary evidence, the amendment of its original complaint to add new claims against Security Title, or some justification for Spring Gardens' delays in pursuit of its suit, the district court had nothing new to consider, so it was not an abuse of discretion for the district court to decline to reconsider its summary judgment decision.

CONCLUSION

¶15    Spring Gardens undercut its own negligence claim against Security Title through its deemed admissions. And rather than respond by amending its complaint, filing a motion to withdraw its admissions, or timely making the new arguments put forth in its motion for reconsideration or ably argued by new appellate counsel, Spring Gardens chose not to conduct further discovery and not to submit any evidence in support of its position. The record establishes that Spring Gardens had ample time and opportunity to conduct discovery and to deny Security Title's requests for admissions if they were not warranted, but it did not do so. The district court did not abuse its discretion when it declined to rescue Spring Gardens from its own dilatory behavior, and the district court further did not abuse its discretion by refusing to consider Spring Gardens' new claims raised in its motion for reconsideration.

¶16    Affirmed.

———————