2007 UT App 235

**Kathryn SOHM, Plaintiff and Appellant,**

v.

**DIXIE EYE CENTER; Ronald L. Snow, M.D.; and Jeffry R. Ricks, O.D., Defendants and Appellees.**

No. 20060274.

Court of Appeals of Utah.

July 6, 2007.

Before Judges GREENWOOD, ORME, and THORNE.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Plaintiff Kathryn Sohm appeals the trial court's grant of summary judgment in favor of Defendants Dixie Eye Center; Ronald L. Snow, M.D.; and Jeffry R. Ricks, O.D. Plaintiff alleges that summary judgment was improper because (1) the trial court granted judgment on the basis of damages, an issue that was not raised nor briefed by the parties, and (2) even if the parties did not address the issue, Plaintiff met her burden with respect to damages. We reverse and remand.

## BACKGROUND [1]

¶2 Plaintiff is approximately eighty-four years old and has suffered from glaucoma

---

1. We recite the facts in the light most favorable to the nonmoving party. *See Young v. Salt Lake*

since 1980. She also suffers from cataracts, diabetes, and high blood pressure. Defendants treated Plaintiff for her glaucoma from 1995 through 2001. At the time of Plaintiff's initial visit with Defendants, she exhibited intraocular pressures of sixteen and seventeen, and her glaucoma was "well controlled." Over the next three years, Plaintiff's intraocular pressures increased slightly, and her glaucoma was under "adequate to marginal control." During 2000, however, Plaintiff's intraocular pressures increased significantly, and Dr. Snow, Plaintiff's opthomalogist, characterized her glaucoma as being under "inadequate control." For the duration of her patient-physician relationship with Defendants, Plaintiff's intraocular pressures remained elevated, and her glaucoma remained "out of control."

¶ 3 During a February 9, 2001 appointment, Plaintiff's intraocular pressures were measured at thirty-four and thirty-eight, and not responding to eye drops. In spite of her worsening condition, Dr. Snow recommended that Plaintiff return for a re-check in four to six months. Instead of waiting that long, Plaintiff returned to the doctor in two months. At that time, her intraocular pressures were elevated to forty-two and forty, and a visual field test showed a significant change in her visual field. Without first decreasing her intraocular pressures, Dr. Snow performed cataract surgery on Plaintiff.

¶ 4 Throughout the rest of her care with Defendants, Plaintiff's intraocular pressures continued to elevate, at one point up to sixty and forty-eight, respectively. Even Dr. Snow testified that when eye pressures hit sixty, "you have to wonder what's going on." Dr. Snow also admitted that intraocular eye pressures of sixty could damage the optic nerve.

¶ 5 While Dr. Snow was away on vacation, Plaintiff saw one of his associates, Dr. Ricks.

Plaintiff again had high intraocular pressures and raised several complaints about her eyes. Dr. Ricks responded with a poem, which he wrote on a prescription pad, entitled "Medication for Attitude." The poem read: "For every problem under the sun, there is a solution or there is none. If there is one hurry and find it, if there is none, never mind it." Dr. Ricks also recommended that Plaintiff make an appointment in "10 days or so." At her daughter's urging, Plaintiff instead made an appointment with Dr. Kenneth Tuck, a glaucoma specialist in Roanoke, Virginia. Upon seeing Dr. Tuck almost two months later, Dr. Tuck was immediately alarmed by Plaintiff's high intraocular pressures and referred her to Dr. Frank Cotter for "emergent"[2] treatment. Dr. Cotter scheduled an emergency trabeculectomy and brought Plaintiff's intraocular pressures down to ten. In a follow-up letter to another physician, Dr. Cotter stated that Plaintiff's "markedly elevated intraocular pressures caused [her] to develop atrophy of the neuroretinal rim which is contributing to the visual field deterioration."

¶ 6 Plaintiff has since become legally blind in her right eye. Looking through her left eye "is like looking through a fog." Moreover, her eyes water, and she must wear sunglasses most of the time. Among several other detrimental life changes, Plaintiff can no longer drive, watch television, cook, sew, or read. She also requires assisted living.[3]

¶ 7 In 2001, Plaintiff filed a complaint against Defendants, alleging medical malpractice for the negligent treatment of her glaucoma. Dr. Robert Stein, Plaintiff's expert, testified during a deposition that Defendants repeatedly breached the standard of care while treating Plaintiff's glaucoma, i.e., that "proper visual field testing was not done" while Plaintiff was in Defendants' care; that Defendants did not "document [Plaintiff's] optic nerve appearance" properly; that

---

*City Sch. Dist.*, 2002 UT 64, ¶ 2, 52 P.3d 1230.

**2.** "Emergent" is the word used by Plaintiff's expert. Merriam Webster's Unabridged Medical Dictionary defines emergent as "calling for prompt or urgent action," e.g., an "emergent condition." *Merriam Webster's Unabridged Medical Dictionary*, http://www2.merriam-webster.

com/cgi-bin/mwmednlm?book=Medical & va=emergent (last visited June 22, 2007).

**3.** Of course, these are not completely anomalous conditions for a person of Plaintiff's age. But again, we recite the facts in the light most favorable to Plaintiff, the non-moving party.

Defendants improperly performed cataract surgery on Plaintiff before first lowering her intraocular pressure; and that Defendants improperly attended to Plaintiff's "wildly fluctuating intraocular pressures [and] ... discomfort." Dr. Stein further stated that Defendants "essentially ignore[d Plaintiff's] emergent problem," while Dr. Tuck more appropriately treated her condition "as it should have been, as an acute emergency requiring immediate attention."

¶ 8 Dr. Stein further concluded that Defendants' negligent care "contributed to [Plaintiff's] dramatic loss of vision." More specifically, he stated that there was "some visual loss prior to [Plaintiff's cataract] surgery that really never should have happened," and that "there's a much greater likelihood that [Plaintiff] would not have suffered these visual field losses to this degree had there been intervention." Dr. Stein also stated, however, that loss of vision in a case like Plaintiff's "can occur even with the best of care." And although Dr. Stein believed that with proper treatment Plaintiff "might not have suffered any field loss at all," Dr. Stein could not specify, to a reasonable degree of medical probability, what percentage of vision loss Plaintiff would have had under appropriate care.

¶ 9 After Dr. Stein's deposition, Defendants filed a motion for summary judgment, arguing that Plaintiff failed to "establish the element of *causation*" because Dr. Stein "was unable to state, within a reasonable degree of medical probability, what level of vision [Plaintiff] would have had if Defendants had given" her appropriate care. Defendants further asserted that it would be "entirely speculative and impossible to attempt to state what causative damages may have occurred due to the asserted breach of care."

¶ 10 Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment, to which she attached an affidavit of Dr. Stein. Among other things, Dr. Stein stated the following in his affidavit:

14. As I previously testified in my deposition, it is my expert opinion to a reasonable degree of medical probability that the breaches set forth herein are responsible for the damage to [Plaintiff's] eyes and the significant loss of vision she sustained in her right eye.

15. ... As I testified during my deposition, I cannot, nor could any intellectually honest physician, testify to a reasonable degree of medical probability with respect to "percentages" of damage caused by the Defendants' negligence or that would have existed, if any, in the absence of negligence.

16. On the other hand, I did testify ... that "there's a much greater likelihood that [Plaintiff] would not have suffered these visual field losses to this degree had there been intervention."

17. I further testified that in the absence of negligence, [Plaintiff's] vision could have been "dramatically better."

. . . .

22. .... Defendants' many instances of negligent treatment and breaches of the standard of care resulted in a direct consequence to the health and condition of [Plaintiff's] eyes and *caused her to sustain both a significant and permanent loss of vision that she would not have otherwise sustained in the absence of their negligence.*

(Citations omitted.) (Emphasis added.)

¶ 11 The trial court granted summary judgment to Defendants, concluding that "on the proximate cause element, I find sufficient testimony in the deposition of Dr. Stein for Plaintiff to avoid summary judgment.... On the issue of damages, however, Dr. Stein's testimony entirely fails to identify or establish what damage was caused by Defendants' alleged negligence." The trial court further stated that

without some expert to identify the damage caused by Defendants' alleged negligence, a jury would be left with nothing but speculation as a basis for any damages award.... [Dr. Stein] never identified any damage—by type, extent, or nature—that a jury could use as the basis of an award.

In sum, the trial court concluded that Dr. Stein's statements that Plaintiff's vision "could have been dramatically better;" that with more aggressive treatment, she "might

not have had any field loss at all;" and that in the absence of Defendant's negligence, her vision "would be significantly better than it is today," were insufficient to create a genuine issue of fact regarding damages.

¶ 12 Plaintiff appeals, arguing that the trial court improperly granted summary judgment because (1) Defendants' motion for summary judgment only addressed causation, and therefore, the trial court was not entitled to rule on the issue of damages; and (2) notwithstanding that problem, there were genuine issues of material fact regarding damages.

## ISSUE AND STANDARD OF REVIEW

¶ 13 Plaintiff asserts that the trial court erred in granting Defendants' motion for summary judgment. Summary judgment is only "appropriate where 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 10, 52 P.3d 1230 (omission in original) (quoting Utah R. Civ. P. 56(c)). A challenge to a grant of summary judgment presents a question of law, which we review for correctness. *See id.* In doing so, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* at ¶ 2 (quotations and citation omitted). Moreover, in reviewing summary judgment in negligence cases, "we are guided by the general judicial policy that favors a trial on the merits when there is some doubt as to the propriety of a summary judgment." *King v. Searle Pharms., Inc.*, 832 P.2d 858, 864–65 (Utah 1992); *see also Schreiter v. Wasatch Manor, Inc.*, 871 P.2d 570, 575 (Utah Ct.App.1994) ("[A]s a general proposi-

tion, summary judgment is inappropriate to resolve a negligence claim on its merits, and should be employed only in the most clearcut case." (quotations and citations omitted)).

## ANALYSIS

### I. Defendants' Motion for Summary Judgment

¶ 14 Plaintiff first argues that summary judgment was inappropriate because the trial court granted Defendants' motion on the issue of damages, an issue that was neither raised nor briefed by either party. Although Defendants' Memorandum in Support of Their Motion for Summary Judgment was brief and focused primarily on causation, it did, in fact, address damages because the parties discussed damages as part of their causation argument.[4] For example, Defendants argued that "Plaintiff has failed ... to establish a prima facie case of a causal link allegation and injury or damage to the Plaintiff without resorting to speculation." Defendants also asserted that "Plaintiff's own expert ... cannot causally link Plaintiff's vision loss *or the extent of her vision loss,* [and] a jury should not be permitted to speculate regarding these issues." (Emphasis added.) Moreover, Plaintiff responded to Defendants' argument, stating, "Utah law does not *require* Plaintiff to produce expert testimony with respect to what her condition would be in the absence of negligence ... [or] to quantify the 'percentage or proportion' of the damage caused by the Defendants' negligence. Apportionment of liability ... is the exclusive province of the jury." Because the parties discussed, albeit briefly, the extent of Plaintiff's recoverable damages and Plain-

---

4. Perhaps taking the lead from Defendants—who moved for summary judgment on grounds that Plaintiff failed to establish "causative damages"—the trial court and the parties use the terms "damages" and "injury" seemingly interchangeably. For clarification, in negligence actions, "injury" is typically defined as "any harm caused to a person, such as a broken bone, a cut, or a bruise." *Black's Law Dictionary* 790 (7th ed.1999). In contrast, damages generally refers to "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Id.* at 393; *see also Acculog, Inc. v. Peterson*, 692 P.2d 728, 730 (Utah 1984) (" 'The term "injury"

is sometimes used in the sense of 'damage,' as including the harm or loss for which compensation is sought, and has been defined as damage resulting from an unlawful act; but in strict legal significance, there is, properly speaking, a material distinction between the two terms, in that injury means something done against the right of the party, producing damage, whereas damage is the harm, detriment, or loss sustained by reason of the injury.' " (quoting *Clark v. Cassetty*, 71 N.M. 89, 376 P.2d 37, 39 (1962)). Because the parties repeatedly use the terms interchangeably, we do the same. By doing so, we by no means endorse collapsing the two concepts in this way.

tiff's evidence regarding the same, we conclude that the issue of damages was, in fact, raised below and that the trial court was not precluded from addressing that issue.

## II. Plaintiff's Prima Facie Case

▇▇▇ ¶ 15 Plaintiff next asserts that the trial court erred in granting summary judgment because, assuming the trial court properly addressed the issue of damages, Plaintiff met her burden regarding the issue. To sustain a medical malpractice action, a plaintiff must demonstrate "(1) the standard of care by which the [physician's] conduct is to be measured, (2) breach of that standard by the [physician], (3) injury that was proximately caused by the physician's negligence, and (4) damages." *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 96, 82 P.3d 1076 (alterations in original) (quotations and citations omitted). "A plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the [elements] of the prima facie case justifies a grant of summary judgment to the defendant." *Kent v. Pioneer Valley Hosp.*, 930 P.2d 904, 906 (Utah Ct.App.1997) (alteration in original) (quotations and citation omitted). "Because of the complex issues involved in a . . . medical malpractice case," the plaintiff is required to prove the standard of care and proximate cause through expert testimony. *Id.*

¶ 16 Here, Defendants moved for summary judgment on the basis that Plaintiff's expert failed to establish "causative damages." The trial court granted Defendants' motion, concluding that although there was sufficient evidence to avoid summary judgment on the issue of causation, there was insufficient evidence to overcome summary judgment on the issue of damages. Specifically, the trial court stated,

> In the entire context of Dr. Stein's testimony, . . . I find a sufficient issue regarding proximate cause to prevent summary judgment.
>
> On the issue of damages, however, Dr. Stein's testimony entirely fails to identify or establish what damage was caused by Defendants' alleged negligence. . . . [Dr. Stein] never identified any damage—by

type, extent, or nature—that a jury could use as the basis of an award.

▇▇▇ ¶ 17 We first note that a finding of proximate cause necessarily includes a finding of identifiable injury. *See Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 486 (Utah Ct.App.1991) ("Proximate cause is that cause which, in natural and continuous sequence, (unbroken by an efficient intervening cause), *produces the injury* and without which the result would not have occurred. It is the efficient cause-the one that necessarily *sets in operation the factors that accomplish the injury.*" (emphasis added) (quotations and citations omitted) ). Thus, we turn to whether, in light of that fact, the trial court was entitled to rule, as a matter of law, that Plaintiff failed to present evidence sufficient to defeat a motion for summary judgment because her expert did not precisely identify the extent of Plaintiff's damages.

¶ 18 In *Judd v. Drezga*, 2004 UT 91, 103 P.3d 135, the Utah Supreme Court noted that "damages are a question of fact, and . . . questions of fact are distinctly within the jury's province." *Id.* at ¶ 34. This is a long-standing principle in Utah case law. *See, e.g., Mel Hardman Prods., Inc. v. Robinson*, 604 P.2d 913, 918 (Utah 1979) ("When the matter of damages is in dispute, it is an issue upon which the parties are entitled to a jury trial, the same as on other disputed issues of fact."); *Rosenthal v. Harker*, 56 Utah 113, 189 P. 666, 667 (1920) ("In cases of tort, . . . it is one of the fundamental principles of the law that the injured party is entitled to recover fair and adequate compensation. . . . The amount to be awarded in a particular case is a question to be determined by the jury according to the particular facts and circumstances."). Once the trial court determined that Plaintiff met the evidentiary threshold respecting proximate cause, or in other words, that Defendants' negligence may have been the proximate cause, at least in part, of Plaintiff's loss of vision, a jury was entitled to determine the extent of Plaintiff's damages. *See Judd*, 2004 UT 91 at ¶ 34 (stating that "it is the jury's duty to determine the amount of damages a plaintiff in fact sustained").

¶ 19 Defendants assert that this conclusion is in error because any determination of damages would be too speculative. We disagree. Dr. Stein testified during his deposition that to a reasonable degree of medical probability, Defendants' conduct was responsible for the damage to Plaintiff's eyes and the significant loss of vision she sustained in her right eye. In the absence of negligence, Dr. Stein stated that Plaintiff's "vision would be significantly better than it is today." While it is true, as Defendants note, that damages may not be based entirely on speculation, it is also true that proof of damages need not be mathematically certain. *See Winsness v. M.J. Conoco Distribs., Inc.,* 593 P.2d 1303, 1305–06 (Utah 1979).

¶ 20 Although Dr. Stein could not precisely identify how much better Plaintiff's eyes would have been had they been properly cared for, the law does not require such exacting testimony. When evidence supports a finding of the fact of damage, i.e., proximate cause, "a defendant should not escape liability because the amount of damage cannot be proved with precision." *Id.* at 1306. " 'There is little that can be regarded as "certain," especially with respect to what would have happened if the march of events had been other than it in fact has been. Neither court nor jury is required to attain "certainty" in awarding damages.' " *Id.* (quoting 5 Corbin on Contracts § 1022 (1964) ). Because the trial court concluded that there was sufficient evidence to support a finding of proximate cause, we determine that it was within the province of the jury, not the trial court, to rule on the issue of damages.

¶ 21 Finally, Defendants assert that Plaintiff failed to create a genuine issue of material fact regarding damages because Dr. Stein's affidavit was "somewhat contrary" to his deposition testimony. *See Webster v. Sill,* 675 P.2d 1170, 1172–73 (Utah 1983) (stating that a genuine issue of material fact cannot be created by filing an affidavit in contradiction to a witness's prior testimony unless there is an explanation for the discrepancy). This argument does not affect our conclusion because even if Dr. Stein's affidavit contradicts his deposition testimony, which we do not think it does, the same inconsistencies existed *within* the deposition testimony itself. For example, in his deposition, Dr. Stein stated that Defendant's negligence "contributed to [Plaintiff's] dramatic loss of vision," that there was "some visual loss prior to [Plaintiff's] surgery that really should never have happened," and that "[t]here's a much greater likelihood that [Plaintiff] would not have suffered these visual field losses to this degree had there been intervention." However, Dr. Stein also stated that loss of vision in a case like Plaintiff's "can occur even with the best of care," and that he could not specify, to a reasonable degree of medical probability, what percentage of vision loss Plaintiff would have had under appropriate care. Moreover, the trial court considered "the entire context of Dr. Stein's testimony" to conclude that there was sufficient evidence to support proximate cause, and this conclusion is not challenged on appeal. Consequently, we reverse the trial court's grant of summary judgment in favor of Defendants, and remand for proceedings consistent with this opinion.

## CONCLUSION

¶ 22 Plaintiff argues on appeal that the trial court erred in granting Defendants' motion for summary judgment. We agree because (1) the trial court concluded that Plaintiff established sufficient evidence regarding proximate cause and inherent in that conclusion is a finding of identifiable injury; (2) issues regarding damages present questions of fact, which should be resolved by a jury; (3) Plaintiff need not precisely prove damages; and (4) any alleged discrepancies in Dr. Stein's testimony do not alter these conclusions.

¶ 23 We reverse and remand.

¶ 24 WE CONCUR: GREGORY K. ORME, and, WILLIAM A. THORNE JR., Judges.