2011 UT App 37

**STEVENS–HENAGER COLLEGE,**
Plaintiff and Appellant,

v.

**EAGLE GATE COLLEGE, PROVO COLLEGE, JANA MILLER, et al.,**
Defendants and Appellees.

No. 20090815–CA.

Court of Appeals of Utah.

Feb. 3, 2011.

Troy L. Booher and Robert E. Mansfield, Salt Lake City, for Appellant.

Thomas R. Karrenberg, Jennifer R. Eshelman, and Nathan B. Wilcox, Salt Lake City, for Appellees.

Before Judges McHUGH, THORNE, and VOROS.

## OPINION

McHUGH, Associate Presiding Judge:

¶1 Stevens–Henager College (Stevens–Henager) appeals the trial court's order granting summary judgment in favor of Eagle Gate College, Provo College, and Jana Miller (collectively, Eagle Gate) based upon a failure of proof on damages. Stevens–Henager also appeals several of the trial court's subsequent orders on the ground that they were based, at least in part, on the summary judgment ruling. We affirm.

## BACKGROUND

¶2 Eagle Gate and Stevens–Henager operate competing private colleges. In 2003, Eagle Gate began hiring Stevens–Henager's

employees, including Jana Miller, an admissions consultant. After Miller began her employment, she recruited additional Stevens–Henager employees who also moved to Eagle Gate. Some of these employees had access to a confidential database of potential students (leads) that had been compiled through the advertising and recruitment efforts of Stevens–Henager. Shortly after moving to Eagle Gate, these employees downloaded the list of leads from the Stevens–Henager database and altered the information on the Stevens–Henager computer system to impede Stevens–Henager's ability to contact the potential students.[1]

¶ 3 When Stevens–Henager discovered what its former employees had done, it sued Eagle Gate, alleging various causes of action and requesting both damages and injunctive relief. In its complaint, Stevens–Henager alleged that it had suffered damages of at least $10,250,000. Thereafter, Stevens–Henager filed initial disclosures, stating that it "ha[d] not yet computed the damages it ha[d] suffered" and that "[m]uch of the damage . . . is irreparable in nature and may be difficult or impossible to quantify." Stevens–Henager then promised, "To the extent any of these categories of damages can reasonably be quantified, Stevens–Henager will supplement these disclosures when sufficient information is available by which to make such calculations."

¶ 4 During discovery, Stevens–Henager indicated that its experts would provide support for its damages claim. For example, in response to written discovery requests from Eagle Gate, Stevens–Henager routinely stated, "Plaintiff's experts will provide information and analysis concerning the damages suffered . . . ." In a further attempt to obtain information about damages, Eagle Gate questioned three Stevens–Henager executives—Carol Gastiger, Vicki Dewsnup, and Carl Barney (collectively, the Executives)—on that subject during their depositions.

¶ 5 When asked what facts she was aware of that would support the allegation that Eagle Gate had caused damage to Stevens–Henager, Gastiger stated, "I think the loss of the Tongan population.[2] I think the money we extended on it. I mean in very real dollars. And in very non-real dollars, in time and in effort [t]hat are not in specific dollars." Next, Gastiger opined that Stevens–Henager had been damaged by Eagle Gate's recruitment of its admissions director, stating that she "believe[d] that when you lose a very competent Admissions Consultant you lose production for a period of time." Gastiger explained her theory of lost productivity, as follows:

[L]et's say that I replace [an admissions consultant] and the other person starts [3] five [students] a month. [The previous admissions consultant] is averaging eight. That's a total of nine people in a given three-month period of time, if this other person ever gets as good as [the previous admissions consultant]. You multiply that times tuition. That's money—real money, in my opinion that's been lost. Those are real dollars, I think.

¶ 6 Eagle Gate also inquired about Dewsnup's understanding of the basis for Stevens–Henager's damages claim. In particular, Eagle Gate focused on Dewsnup's statement in her affidavit filed in support of Stevens–Henager's Motion for Temporary Restraining Order and Preliminary Injunction that "[t]he actions of the defendants in (a) targeting and taking Stevens–Henager's key employees, (b) targeting and taking Stevens–Henager's students, and (c) taking and using Stevens–Henager's lead lists have caused and continue to cause Stevens–Henager tremendous damage that cannot adequately be calculated or measured." When asked to describe the "tremendous damage" caused to Stevens–Henager, Dewsnup identified the "extensive costs incurred in advertising and marketing," explaining,

---

1. Eagle Gate fired these employees after learning of their actions.

2. Stevens–Henager alleges that Eagle Gate "attempted to steal Stevens–Henager's Polynesian Program" by "trying to hire" Stevens–Henager's

Tongan recruiters "[a]fter Stevens–Henager had spent more than $200,000 on recruiting efforts in the Tongan community."

3. "Start" is the term Stevens–Henager uses to describe enrollment of a new student.

We continue to use any leads that come into the college from time to time, and with the loss of adequate phone numbers ... it became difficult, if not impossible, to use our own leads.... I currently have not been able to compare the lists of leads between Stevens–Henager and Eagle Gate or Provo College.... There was economic damage, certainly, and also damage to morale at the campuses affected.... There was loss of employees.

¶ 7 In response to Eagle Gate's questions about damages, Barney expressed his opinion that Stevens–Henager had suffered "many millions of dollars" in damages as a result of Eagle Gate's conduct and that the amount "could be" more than $10 million. Upon further questioning, Barney indicated that his opinion was based on (1) the decline in the number of starts at Stevens–Henager's Provo and Ogden campuses, (2) "[t]he cost of hiring and training new people," and (3) "[t]he efforts to rebuild the admissions department."

¶ 8 None of the Executives provided any economic analysis or even factual support for their opinions concerning the damage to Stevens–Henager. Rather, Stevens–Henager continued to assert that the support for its claim of damages would be provided by its experts. Notwithstanding that representation, Stevens–Henager obtained numerous extensions to the deadline for providing Eagle Gate with an expert report computing the alleged damages. Between December 2005 and May 2007, the trial court entered four separate scheduling orders, the last of which established the discovery cutoff as June 18, 2007, and the deadline for expert disclosures as June 28, 2007. On June 26, 2007, Stevens–Henager filed a motion to postpone the deadlines for an additional sixty days. The trial court did not rule on the fifth motion for an extension of the discovery schedule at that time.

¶ 9 When Stevens–Henager still had not made its expert disclosures by October 9, 2007, Eagle Gate filed a motion for summary judgment on all claims, alleging that Stevens–Henager had failed to provide any support for its claim that it had been damaged. In its opposition memorandum, Stevens–Henager admitted that it was "[u]ndisputed that Plaintiff could only provide a good faith estimate of the damages incurred as a result of Defendants' actions based on the knowledge of Plaintiff's decline in enrollment, costs of hiring and training new employees, and costs of rebuilding Plaintiff's Admissions Department" and that "a damage[s] calculation in this matter requires expert analysis and would be provided by Plaintiff's experts." [4] Nevertheless, Stevens–Henager argued that the testimony from the Executives provided sufficient evidence of damages to defeat summary judgment and that Stevens–Henager had been unable to complete its expert reports because Eagle Gate had not yet disclosed essential information.

¶ 10 After a hearing on January 22, 2008, the trial court rejected Stevens–Henager's arguments, noting that "the parties agree that expert testimony is needed in order to establish damages in this case," that the time for producing an expert report had expired, that Stevens–Henager had ample time and sufficient information to prepare a timely expert report, that Stevens–Henager had "failed entirely to substantiate its damages claim," and that "there [was] simply no excuse or justification for [Stevens–Henager's] delays in providing expert reports and computations of its damages." The trial court granted Eagle Gate's summary judgment motion and dismissed all of Stevens–Henager's causes of action.

¶ 11 On March 25, 2008, Stevens–Henager asked the trial court to reconsider the summary judgment in favor of Eagle Gate, argu-

---

4. Stevens–Henager notes one place in its opposition memorandum that stated, "Plaintiff's damages ... must be calculated on losses sustained by Plaintiff, *many* of which are quantifiable only through expert analysis," as support for the proposition that it did not admit that expert testimony was required to prove all of its damages. (Emphasis added.) However, nowhere in its opposition memorandum did Stevens–Henag-

er identify the damages that could be proved without expert testimony. Instead, Stevens–Henager expressly conceded that expert testimony was required to prove the value of its lead list and the diminution of that value caused by Eagle Gate, the impact of Eagle Gate's conduct on enrollment rates, and the increased costs and decreased productivity caused by the "poaching" of its employees.

ing again that the Executives' depositions substantiated Stevens–Henager's damages claim and that, in any case, its claims for injunctive relief could not be dismissed based on the failure to substantiate damages. Stevens–Henager also submitted an expert report at that time. The trial court reversed its earlier order only insofar as it pertained to Stevens–Henager's claims for injunctive relief. With respect to the claims for monetary relief, the trial court reaffirmed its conclusion that Stevens–Henager had failed to substantiate its damages claim.

¶ 12 Eagle Gate next filed a motion to strike the expert report as untimely, a motion in limine to exclude evidence of monetary damages at trial on the claims for injunctive relief, and a second motion for summary judgment on Stevens–Henager's claims for equitable relief under the Federal Computer Fraud and Abuse Act (CFAA), *see* 18 U.S.C. § 1030 (2006 & Supp.2009), and the Utah Unfair Competition Act, *see* Utah Code Ann. §§ 13–5a–101 to –103 (2009 & Supp.2010). The trial court granted the motion to strike on the ground that the expert report had not been filed by the June 28, 2007, deadline and also granted Eagle Gate's motion in limine, concluding that the question of damages was not relevant to the equitable claims. Finally, the trial court granted Eagle Gate's second motion for summary judgment, determining that a claim under the CFAA could not be sustained without proof of at least $5,000 in damages and that injunctive relief was not a remedy under the Unfair Competition Act.[5] *See id.*

## ISSUE AND STANDARD OF REVIEW

¶ 13 Stevens–Henager argues that the trial court erred in granting Eagle Gate's first motion for summary judgment because the testimony of the Executives provides adequate support for Stevens–Henager's dam-

ages claim. We review the trial court's grant of summary judgment on the issue of damages for correctness, viewing "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Sohm v. Dixie Eye Ctr.*, 2007 UT App 235, ¶ 13, 166 P.3d 614.

## ANALYSIS

■ ¶ 14 "A plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the [elements] of the prima facie case justifies a grant of summary judgment to the defendant." *Id.* ¶ 15 (alteration in original) (internal quotation marks omitted). Stevens–Henager does not dispute that a finding that it has suffered damages is a required element of each of its claims for monetary relief. Instead, Stevens–Henager argues that the testimony of the Executives provided sufficient evidence that it suffered damages proximately caused by Eagle Gate's actions, thereby creating a genuine issue of material fact on the amount of such damages. Thus, Stevens–Henager asserts that the trial court erred in granting summary judgment in favor of Eagle Gate. In response, Eagle Gate contends that Stevens–Henager cannot establish damages without expert testimony and that, even if it could do so, the Executives' testimony is insufficient to prove the fact or the amount of damages.

¶ 15 For purposes of our analysis, we assume without deciding that Stevens–Henager could establish its damages without expert testimony. *See generally Young v. Fire Ins. Exch.*, 2008 UT App 114, ¶ 33, 182 P.3d 911 (asserting that when the issue of causation is "not beyond the grasp of ordinary people," expert testimony is not required).[6] Notwithstanding that assumption, we conclude that Stevens–Henager failed to "present evidence sufficient to establish a genuine issue of material fact" on damages. *See Giusti v. Ster-*

---

5. Although Stevens–Henager's remaining equitable claims are still pending in the trial court, the trial court certified as final for purposes of appeal its rulings on Eagle Gate's first summary judgment motion; Stevens–Henager's motion for reconsideration; and Eagle Gate's motion to strike, motion in limine, and second summary judgment motion.

6. We note, however, that Stevens–Henager informed the trial court that "this is the type of case ... where damages are going to be difficult to determine" and "where an expert is necessary."

*ling Wentworth Corp.,* 2009 UT 2, ¶ 52, 201 P.3d 966 (affirming summary judgment in favor of the defendant due to the plaintiff's failure to raise a genuine issue of material fact on damages); *see also Borghetti v. System & Computer Tech., Inc.,* 2008 UT 77, ¶ 31, 199 P.3d 907 (same).

### I. Stevens–Henager Was Required To Present Evidence of Both the Fact and the Amount of Damages.

 ¶ 16 A plaintiff is required to prove both the fact of damages and the amount of damages. *See TruGreen Cos. v. Mower Bros.,* 2008 UT 81, ¶ 15, 199 P.3d 929; *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 336 (Utah 1985). To establish the fact of damages, "[t]he evidence . . . must give rise to a reasonable probability that the plaintiff suffered damage." *Atkin,* 709 P.2d at 336; *see also Andreason v. Aetna Cas. & Sur. Co.,* 848 P.2d 171, 176 (Utah Ct.App.1993) ("[A] plaintiff [must] prove the fact of damages by a preponderance of the evidence. . . ."). " 'While the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages.' " *TruGreen,* 2008 UT 81, ¶ 15, 199 P.3d 929 (quoting *Atkin,* 709 P.2d at 336). Stevens–Henager " 'has the burden to produce a sufficient evidentiary basis to establish the fact of damages and to permit the trier of fact to determine with reasonable certainty the amount' " of those damages. *Id.* (quoting *Sawyers v. FMA Leasing Co.,* 722 P.2d 773, 774 (Utah 1986) (per curiam)).

¶ 17 Notwithstanding this authority, Stevens–Henager contends that it was not required to present evidence of the amount of damages, asserting that "proof that defendants' conduct was the proximate cause of damages is sufficient to preclude summary judgment, even in the absence of a quantification of those damages." In support, Stevens–Henager relies upon the Utah Supreme Court's opinion in *Anderson Development Co. v. Tobias,* 2005 UT 36, 116 P.3d 323, and this court's decisions in *Sohm v. Dixie Eye*

*Center,* 2007 UT App 235, 166 P.3d 614, and *Renegade Oil, Inc. v. Progressive Casualty Insurance Co.,* 2004 UT App 356, 101 P.3d 383. We reject this argument for two reasons.

¶ 18 First, Stevens–Henager conceded during the hearing on Eagle Gate's summary judgment motion that it had been unable to establish proximate cause. In response to the trial court's observation that Stevens–Henager appeared to be in control of the information necessary to calculate any decline in enrollment, Stevens–Henager admitted that it could calculate the raw number by which admissions declined but that "what it comes down to, Judge, is causation." Stevens–Henager explained that the issue was "the reason those numbers declined from 'X' date to 'Y' date" and that Eagle Gate would argue that "it's simple market forces." Stevens–Henager argued that it needed additional information from Eagle Gate in order to "do the comparison [between lead lists] to make that causation determination," which was "integral in proving [its] damage[s] figures with drop of enrollment."

 ¶ 19 Based on those representations and its determination that Stevens–Henager had failed to provide a timely expert report, the trial court granted summary judgment due to Stevens–Henager's failure to provide the basis for and calculation supporting its damages claim. Consequently, we are unwilling to accept Stevens–Henager's suggestion that we limit our review to whether the jury should be permitted to determine the amount of damages. Instead, we consider whether Stevens–Henager has met both its burden to prove the fact that Eagle Gate's conduct caused it damage and its separate burden to provide adequate evidence from which the jury could determine the amount of the damages without speculation.

¶ 20 Second, even if we were to assume that Stevens–Henager had proved that Eagle Gate caused it damage, we do not agree that Stevens–Henager would be excused from providing any evidence as to the amount of those damages. The cases cited by Stevens–Henager do not persuade us otherwise. In *Anderson Development,* the plaintiff alleged that the defendants' misrepresentation that

they had received a written offer to purchase the seller's property, made after a purchase contract with the plaintiff had expired due to failure of a condition precedent, resulted in costly conditions and an increased purchase price when the plaintiff and the seller entered into a second purchase contract for the property.[7] *See* 2005 UT 36, ¶ 12, 116 P.3d 323. On interlocutory review, the supreme court reversed the trial court's order granting summary judgment to the defendants, holding that the evidence of proximate cause was "thin" but "sufficient to withstand summary judgment." *See id.* ¶ 33. Stevens–Henager points to the absence of discussion about the evidence required to prove the amount of damages in the supreme court's opinion as support for the position that none is required. However, the ability to prove the amount of damages, as opposed to whether the plaintiff could link some actual damage to the defendants' conduct to establish proximate cause, was not at issue in *Anderson Development.* Furthermore, the supreme court's recitation that the purchase price under the second contract was more than $175,000 greater than under the first contract and that additional land use restrictions in the second contract increased development costs by more than $1,000,000, *see id.* ¶ 10, suggests that there was ample evidence on that issue. The same is not true here.

¶ 21 The decision in *Sohm* is equally unhelpful to Stevens–Henager. There, we reversed the trial court's order granting summary judgment in favor of the defendants where the plaintiff's expert testified that the plaintiff suffered vision loss due to the defendants' malpractice but could not precisely identify what percentage of the loss was attributable to negligent treatment as opposed to preexisting glaucoma. *See* 2007 UT App 235, ¶¶ 11, 16, 19, 166 P.3d 614. We concluded that the jury could be charged with resolving this issue, stating that "[w]hen evidence supports a finding of the fact of damage[s] ... a defendant should not escape

liability because the amount of damage[s] cannot be proved with precision." *Id.* ¶ 20 (internal quotation marks omitted). However, the plaintiff in *Sohm* first established proximate cause by linking the defendants' conduct to actual damage to her vision. *Id.* ¶ 18. Next, she quantified her injuries by providing evidence of the impact of the loss of vision on her life. *See id.* ¶¶ 2–6. *See generally Jorgensen v. Gonzales,* 14 Utah 2d 330, 383 P.2d 934, 936 (1963) (holding that the task of calculating the amount of damages for "personal injuries involving ... personal inconvenience[ ] and pain and suffering ... is properly left to the sound judgment of a jury of practical people upon the basis of the evidence and in light of their experience in the affairs of life"). Thus, we held that the jury could properly determine how much of the plaintiff's damages were caused by the defendants and then quantify the amount of damages appropriate for the personal inconvenience and pain and suffering caused by the defendants. *See Sohm,* 2007 UT App 235, ¶ 20, 166 P.3d 614; *cf. Jorgensen,* 383 P.2d at 936. *See generally Sohm,* 2007 UT App 235, ¶ 14, 166 P.3d 614 ("Apportionment of liability ... is the exclusive province of the jury." (internal quotation marks omitted)). Unlike the plaintiff in *Sohm,* Stevens–Henager seeks economic damages that are not part of the human experience in the affairs of life.

¶ 22 Stevens–Henager's reliance upon our decision in *Renegade Oil* is also misplaced. There, the plaintiff purchased a new truck and notified its insurance agent to add it to an existing insurance policy. *See Renegade Oil, Inc. v. Progressive Cas. Ins. Co.,* 2004 UT App 356, ¶ 2, 101 P.3d 383. The agent failed to communicate the request to the insurer and coverage was denied when the truck was involved in an accident. *See id.* ¶¶ 2–3. When the insurer refused to defend a lawsuit filed against the plaintiff by a third party as a result of the accident, the plaintiff sued the agent for negligence. *See id.* At a

---

7. The plaintiff also claimed that the defendants' protests against the plaintiff's proposed development interfered with and caused the failure of the condition precedent to the first contract. *See Anderson Dev. Co. v. Tobias,* 2005 UT 36, ¶ 12, 116 P.3d 323. The Utah Supreme Court affirmed summary judgment in favor of the defendants, holding that the defendants' objections to the project were protected under the First Amendment and did not cause injury to the plaintiff. *See id.* ¶¶ 22–24, 28.

bench trial, the only evidence of damages the plaintiff offered was the fact that the plaintiff had been sued due to the accident. *See id.* ¶ 4. Only after trial did the plaintiff submit an affidavit of the attorney fees and other damages incurred as a result of the lawsuit. *See id.* On appeal, we rejected the insurance agent's argument that the plaintiff had not presented sufficient evidence of damages at trial, holding that it was obvious that "the amount of damages would equal the costs related to the ... lawsuit that otherwise would have been covered by the [p]olicy." *Id.* ¶ 13 (citing *Levite Undertakers Co. v. Griggs,* 495 So.2d 63, 65 (Ala.1986) (holding that where the damage "is obvious," a plaintiff does not need to present direct evidence of damages at the summary judgment stage)). While the precise amount of damages could not be determined before future events took place, the fact of damages caused by the negligence was proved and the method for calculating the amount of damages was apparent. Neither the fact of damages caused by Eagle Gate nor the method for calculating the amount of such damages is apparent here.

¶ 23 None of the decisions cited by Stevens–Henager provides support for its assertion that proof of proximate cause relieves a claimant of the obligation to produce evidence " 'that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages.' " *TruGreen Cos. v. Mower Bros.,* 2008 UT 81, ¶ 15, 199 P.3d 929 (quoting *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 336 (Utah 1985)). Thus, Stevens–Henager could withstand summary judgment only if it provided evidence of both the fact and the amount of damages. We agree with the trial court that Stevens–Henager did not meet that burden.

II. **The Evidence Presented by Stevens–Henager Was Not Sufficient To Prove Damages at the Summary Judgment Stage.**

A. **The Sufficiency of the Evidence Required To Prove Damages Is Dependent upon the Stage of Litigation.**

¶ 24 The nature and degree of the evidence required to support a claim evolves over the course of litigation. *See Brown v. Division of Water Rights,* 2010 UT 14, ¶ 14, 228 P.3d 747. " 'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.' " *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Even at that stage, however, the attorney who presents a pleading to the court certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Utah R. Civ. P. 11(b). While factual contentions about the amount of the damages suffered may often require further investigation or discovery, the party claiming to have been damaged must undertake that investigation as early in the litigation process as is practicable. Our procedural rules require that parties include in their initial disclosures "a computation of any category of damages claimed by the disclosing party, [including] ... documents or other evidentiary material on which the computation is based." *Id.* R. 26(a)(1)(C). Furthermore, damages experts must be identified and reports supporting their opinions must be exchanged according to the schedule approved by the trial court. *See id.* R. 26(a)(3)(A)–(C).

¶ 25 By the summary judgment stage of litigation, more is required. " 'In response to a summary judgment motion ... the plaintiff can no longer rest on such mere allegations [as are sufficient at the pleading stage], but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.' " *Brown,* 2010 UT 14, ¶ 14, 228 P.3d 747 (quoting *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130). Indeed,

"[a] major purpose of summary judgment is to avoid unnecessary trial by allowing

the parties to pierce the pleadings to determine whether there is a genuine issue to present to the fact finder. In accordance with this purpose, specific facts are required to show whether there is a genuine issue for trial. *The allegations of a pleading or factual conclusions on an affidavit are insufficient to raise a genuine issue of fact.*"

*Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 12, 192 P.3d 858 (emphasis added) (quoting *Reagan Outdoor Adver., Inc. v. Lundgren*, 692 P.2d 776, 779 (Utah 1984)); *see also* Utah R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.").

B. The Executives' Testimony Did Not Provide a Sufficient Basis for a Jury To Find Proximate Cause or To Calculate the Amount of Damages Without Speculation.

¶ 26 Stevens–Henager asserts that it lost profits, incurred costs in replacing its employees, and suffered damage to morale as a result of Eagle Gate's actions. Stevens–Henager also asserts an additional category of damages based on advertising and marketing expenditures it claims were wasted as a result of Eagle Gate's actions. However, advertising and marketing expenses, together with other costs of doing business, are subtracted from gross revenues to calculate net profit. *See Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986) (per curiam) ("Net profits are determined by computing the difference between the gross profits and the expenses that would be incurred in acquiring such profits."); *Atkin*, 709 P.2d at 336 ("Proof of loss of gross income only is an insufficient foundation for proof of amount of damages." (citing *Garcia v. Mountain States Tel. & Tel. Co.*, 315 F.2d 166, 169 (10th Cir.1963))). Actual net profits are compared with either historical data, or with the reasonably supported estimated net profits that would have been earned absent the defendant's conduct, to arrive at the amount of damages. *See Kilpatrick v. Wiley, Rein &*

*Fielding*, 2001 UT 107, ¶¶ 76–77, 37 P.3d 1130 (holding that, for comparison purposes, a start-up company with no historical information could use expert testimony relying on the net profits of similar businesses in the industry to establish the amount of its net lost profits); *Acculog, Inc. v. Peterson*, 692 P.2d 728, 732 (Utah 1984) (reversing a directed verdict where the plaintiff's calculation of lost profits "was meticulously supported by exhibits documenting gross profits, deducting expenses not incurred when the contracts were lost, and deriving the net loss of profits from the difference between the two"). Advertising and marketing costs considered alone, even if the Executives had testified to the actual amounts expended, do not provide evidence of either the fact or the amount of Stevens–Henager's damages. Therefore, we do not consider these expenses as a separate category of damages for purposes of our analysis.

¶ 27 The only evidence Stevens–Henager points to in support of its assertion that it suffered damages due to lost profits, the replacement of employees, and lower morale, or to prove the amount of such damages, is the testimony of the Executives. This evidence is not adequate to survive summary judgment. We address the evidence presented by Stevens–Henager to support each of these contentions in turn.

¶ 28 First, "[l]ost profits must be established with reasonable certainty . . . or, in other words, with sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered." *Kilpatrick*, 2001 UT 107, ¶ 76, 37 P.3d 1130 (internal quotation marks omitted). The Executives suggested that Stevens–Henager's enrollment, and thus its profits, were affected by Eagle Gate's acquisition of its lead list, the alteration of the lead list, and the decreased productivity of the employees hired to replace the ones who left. However, none of the Executives provided sufficient information for the jury to determine, without speculation, whether there was any actual financial loss due to Eagle Gate's actions or to calculate the amount of damages caused by Eagle Gate. *See Giusti v. Sterling Wentworth Corp.*, 2009

UT 2, ¶ 62, 201 P.3d 966 (affirming summary judgment for the defendant because the plaintiff "failed to provide current commission figures" and the trial court "could not accurately compare the numbers to determine whether [the plaintiff] suffered any damage"); *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 784 P.2d 475, 479 (Utah Ct.App.1989) (holding that proof of damages by reasonable certainty requires "more than a mere estimate of net profits, to wit: the plaintiff must provide supporting evidence of overhead expenses and other costs of producing income from which a net figure can be derived").

¶ 29 Gastiger testified only that she "thought" Stevens–Henager was damaged by lost student enrollment from the Tongan community, making her testimony equivocal even about the fact of damages. Further, neither her testimony nor any other evidence offered in opposition to the summary judgment motion indicates how many Tongan student leads were lost, any resulting reduction in enrollment, or the revenue Stevens–Henager could have expected from that enrollment. *Cf. Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 336–37 (Utah 1985) (holding that evidence of an overall decrease in plaintiff's gross income and testimony that clients had difficulty getting in touch with plaintiff and that at least one client was lost, without evidence of the plaintiff's net loss or the value of the lost fees, was not sufficient proof of even the fact of damages). While Dewsnup stated that "[t]here was economic damage," she did not elaborate as to the form of that damage or how it might be calculated. Without more, the jury could not determine, by a preponderance of the evidence, whether Stevens–Henager lost profits, *see generally Andreason v. Aetna Cas. & Sur. Co.,* 848 P.2d 171, 176 (Utah Ct.App.1993) (requiring that the plaintiff prove the fact of damages by a preponderance of the evidence), or the amount of any lost profits with enough certainty to avoid an award based on speculation, *see generally TruGreen Cos. v. Mower Bros.,* 2008 UT 81, ¶ 15, 199 P.3d 929. Here, Stevens–Henager offers mere conclusions and conjecture to support its claim of lost profits.

¶ 30 Stevens–Henager next claims that it was damaged by the loss of productivity incurred by replacing experienced employees with new employees who had less expertise. However, Gastiger testified only that Stevens–Henager might have suffered such a decrease in productivity if the newly hired admissions consultants were unable to start as many students, on average, as the experienced admissions consultants who quit to work at Eagle Gate. The numbers Gastiger used to illustrate her point were merely hypothetical and were not supported by expert testimony, comparisons with similar businesses, or any other evidence that could provide a reasonable basis for the assumptions. *Cf. Price–Orem Inv.,* 784 P.2d at 479 (discussing lost net profits and stating that "the amount of damages may be based upon approximations, if the fact of damages is established, and the approximations are based upon reasonable assumptions and projections"). Although Barney asserted, without further explanation, that Stevens–Henager suffered "economic losses," including "[t]he loss of starts," he did not even hint at how many starts might have been lost or provide any factual information that could be used to assess any resulting economic impact. *Cf. First Sec. Bank of Utah, N.A. v. J.B.J. Feedyards, Inc.,* 653 P.2d 591, 595 (Utah 1982) (rejecting claim for lost profit damages, despite expert testimony on projected profits, where the claimant "presented no evidence showing that his livestock profits actually decreased during the years in question"). Again, Stevens–Henager has failed to establish even the fact of damages allegedly caused by Eagle Gate.

¶ 31 Stevens–Henager further contends that it incurred damages measured by the cost of training the new employees. In support, it again relies upon the testimony of the Executives. However, Dewsnup indicated only that "[t]here was loss of employees," while Barney stated that Stevens–Henager incurred costs to "hir[e] and train[ ] new people" and to "rebuild the admissions department." There is simply no evidence from which the jury could determine whether and in what amount Stevens–Henager was damaged. *Cf. id.* at 596 (rejecting claimant's

testimony that sales increased each year where "no documentary evidence was presented to that effect"). The record is silent on the number of new employees hired, the costs of training them, the specific efforts undertaken to rebuild the admissions department, or the costs incurred as a result.[8] *Cf. Richards v. Brown,* 2009 UT App 315, ¶ 54, 222 P.3d 69, *cert. granted on other grounds,* 225 P.3d 880 (Utah 2010) (holding that the trial court did not exceed its discretion in rejecting the plaintiff's claim of damages where it was not based upon a reasonable approximation from the evidence).

¶ 32 Finally, as support for its damages claim, Stevens–Henager relies upon Dewsnup's and Barney's statements that Eagle Gate's actions damaged morale. Yet Stevens–Henager makes no attempt to translate this general malaise into an economic issue. Stevens–Henager did not present evidence that its overall attrition rate for employees had increased, or that its remaining employees were less productive after Eagle Gate's conduct. Without something more than the Executives' opinion that morale suffered, the testimony is simply too vague to support a finding that Stevens–Henager was damaged by the decrease in morale or to quantify the amount of any such damages without speculation.

¶ 33 The testimony of the Executives merely suggested ways in which Stevens–Henager might have been damaged and then provided unsupported opinions about the range of those hypothetical damages. *See generally Overstock.com, Inc. v. SmartBargains, Inc.,* 2008 UT 55, ¶ 16, 192 P.3d 858 (stating that "unsubstantiated opinions and conclusions [are] insufficient to create a genuine issue of fact"); *Brigham Truck & Implement Co. v. Fridal,* 746 P.2d 1171, 1173 (Utah 1987) ("[B]are contentions, unsupported by any specifications of facts in support thereof, raise no material questions of fact."). The only damages numbers provided by Stevens–Henager throughout the litigation were the $10,250,000 alleged in the original complaint and Barney's estimate that Eagle

Gate's actions had cost Stevens–Henager "many million[s] of dollars." This is true despite the fact that most of the relevant facts were known to Stevens–Henager, *see generally Kraatz v. Heritage Imps.,* 2003 UT App 201, ¶ 54, 71 P.3d 188 ("Greater accuracy is required in cases where highly probative evidence is easy to obtain than in cases where such evidence is unavailable."), including the number of new employees and their salaries, the salaries of the employees who had moved to Eagle Gate, the costs of training new employees, the number of leads generated by new employees as compared with the number generated by their predecessors, and the revenues and expenses associated with each start. *See Cook Assocs. v. Warnick,* 664 P.2d 1161, 1166 (Utah 1983) (holding that where the plaintiff had "provided a breakdown of monthly sales volumes, costs of sale, and net profits for the first 13 months" of operation, as well as evidence on the fact of lost profits, including the net profits earned at another of its locations, this evidence "permit[ted] the jury to make a reasonable approximation of the amount of loss").

¶ 34 The Executives' testimony does little more than reiterate the categories of damages identified in the complaint and the initial disclosures. As previously discussed, more is required in response to a motion for summary judgment. *See Brown v. Division of Water Rights,* 2010 UT 14, ¶ 14, 228 P.3d 747. Despite its promises to do so, Stevens–Henager never provided a timely expert report explaining and quantifying the damages associated with each of those categories. Under these circumstances, we agree with the trial court that summary judgment for Eagle Gate was appropriate.

CONCLUSION

¶ 35 The trial court correctly granted Eagle Gate's motion for summary judgment on the ground that Stevens–Henager failed to provide evidence that could establish its damages. Because the trial court did not err in granting summary judgment, we also affirm

---

**8.** Furthermore, there was no evidence presented concerning any amounts saved by replacing the more experienced employees with less experienced employees, who may have received lower compensation.

its subsequent rulings on Eagle Gate's motion to strike, motion in limine, and second summary judgment motion.

¶ 36 WE CONCUR: WILLIAM A. THORNE JR. and J. FREDERIC VOROS JR., Judges.