*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2020 UT 20**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

GOLD'S GYM INTERNATIONAL, INC.,
*Appellant,*

*v.*

CLARK CHAMBERLAIN and BRENT STATHAM,
*Appellees.*

No. 20170146
Heard December 14, 2018
Reheard November 15, 2019
Filed May 4, 2020

Blake T. Ostler, Tyler J. Moss, Salt Lake City, for appellant

Holly S. Chamberlain, Karthik Nadesan, Salt Lake City, for appellees

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 After ten years of litigation, Gold's Gym International, Inc. (Gold's Gym) prevailed in a suit filed by members of a limited liability company (Members) that had licensed Gold's Gym's name to operate a fitness center in St. George. Gold's Gym wants attorney fees from Members based on a fee provision in the license agreement (License Agreement) between Gold's Gym and the limited liability company. The district court denied fees, reasoning that Members, as individuals, were not parties to the License Agreement and the claims Members had raised did not relate to or arise out of that agreement.

¶2 This ruling strikes Gold's Gym as patently unfair because the district court, over Gold's Gym's repeated objections, appeared to have allowed Members to bring the suit as if they had been parties to the License Agreement. Gold's Gym generally argues that if

someone who is not a party to a contract tries to enforce its terms, it must also assume the obligations that contract imposes.

¶3    Issues of preservation and waiver compromise our ability to reach the heart of that question. We have recognized that in some circumstances a non-party to a contract may be tagged with its obligations, but Gold's Gym has not convinced us that it alerted the district court that this case presented one of those circumstances. And, although there are other arguments that Gold's Gym might have advanced in its opening brief, it did not do so. The arguments that are properly before us—that is, the arguments that Gold's Gym preserved below and advanced in its opening brief—do not convince us that the district court erred. We affirm the district court's denial of the motion for attorney fees.

## BACKGROUND[1]

¶4    More than two decades ago, Members Clark Chamberlain and Brent Statham decided to open a "Gold's Gym" branded fitness center in St. George. While making plans, Members learned that Vince Engle had paid a deposit to have the first option for a Gold's Gym in St. George. Members approached Engle, and he agreed to partner with them.

¶5    Engle, Members, and Doug Chamberlain formed Health Source of St. George, LLC (LLC) for the purpose of opening the gym. Engle, through a wholly owned entity, owned 50 percent of the LLC, while Members and an entity Doug Chamberlain owned each had 25 percent of the membership interests. The LLC was manager-directed. Engle and Doug Chamberlain served as co-managers through their respective entities. Members were not managers.

¶6    In June 1999, the LLC entered into the License Agreement with Gold's Gym. Engle signed as co-manager of the LLC.  By June 2000, the gym was up and running. Engle managed the day-to-day operations. Members moved away from St. George and were no longer involved with the gym on a regular basis. Although Engle provided a financial statement regarding the gym in 2000, Members did not receive any further financial or tax documents through 2005. Members never inquired why.

---

[1] When reviewing a bench trial, we view the facts in the light most favorable to the trial court's decision. *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 72, 99 P.3d 801.

¶7    Meanwhile, as an apparent part of a corporate policy change, Gold's Gym decided to move away from licensing its name in favor of franchising. As part of this policy, Gold's Gym attempted to get its licensees to agree to be franchisees. And to this end, in 2001, Gold's Gym sent franchise documents to Engle and the LLC. In the course of negotiating the franchise agreement, Engle falsely told Gold's Gym that Members were no longer involved in the St. George gym and that the plan was for him to be the sole owner of the franchise. Engle then noted on the franchise documents that a company he owned, Fitcorp, Inc., would be the Gold's Gym franchisee.

¶8    In January 2003, Engle, through Fitcorp, Inc., sold the gym, the franchise rights, the inventory, furniture, and fixtures to another party. Within a month, Members learned about the sale and contacted the buyer. Several months later, Gold's Gym acknowledged and consented to the transfer from Engle to the new buyer.

¶9    Two years later, Members filed a lawsuit against Gold's Gym, Engle, and others. That action lay fallow for an extended period, so the district court dismissed it. Members refiled with the complaint that gives rise to this appeal.

¶10  In their complaint, Members repeatedly asserted that they had personally entered into the License Agreement with Gold's Gym. For example, the complaint averred that "[Members] . . . entered into a license agreement (License Agreement) with Gold's, Inc." Members' various causes of action against Gold's Gym likewise asserted that a contract existed between Gold's Gym and Members individually.[2]

---

[2] In support of their breach of contract claim against Gold's Gym, Members asserted that "[Members] entered into a License Agreement with Gold's Inc. for the purpose of defining each party's rights and obligations in [Members'] ownership of a Gold's Gym franchise," and that "[a]ll of the [Members'] obligations under the License Agreement were either performed or excused." Members then alleged that Gold's Gym breached the License Agreement and that "Defendant Gold's, Inc. knew or should have known . . . that if it breached its License Agreement with [Members] . . . that [Members] in all likelihood would be severely damaged. [Members] are entitled to recover from defendant Gold's . . . ."

(continued . . .)

¶11 This was, in a word, wrong. There was no agreement between Gold's Gym and the Members as individuals. The License Agreement was executed between Gold's Gym and the LLC in which these individuals were members. This distortion plagued the litigation.

¶12 Gold's Gym repeatedly argued to the district court that Members lacked standing to bring these claims because, despite their allegations, Members were not parties to the License Agreement. Gold's Gym argued that the claims Members asserted belonged to the LLC and not to its individual members. Gold's Gym asserted this in its answer, raised the arguments in a motion to dismiss, renewed the arguments in a motion for summary judgment, tried its luck with a motion to reconsider, and then, at trial, gave it another shot in a motion for directed verdict. The arguments never succeeded.[3]

¶13 The district court's most substantive response came in response to Gold's Gym's motion for summary judgment. The district court concluded that "[t]he Court is not convinced that this is a derivative suit," "[Members] . . . are not improper parties," and "Gold's has not shown that this is a derivative action of the sort that

---

As part of the negligence cause of action, Members alleged that "Gold's, Inc. owed a duty to [Members], by virtue of the License Agreement, to protect [Members'] interest granted therein . . . . Gold's, Inc. breached its duty to [Members] . . . ." In like manner, Members asserted that "Gold's, Inc. acted willfully and/or in reckless disregard of [Members'] rights and interest in the Gym, as granted in the License Agreement," and that, but for Gold's Gym's negligence, "[Members'] rights and interest in the License Agreement could not have been transferred . . . ."

Members based their tortious interference with contract claim on the allegation that they "had a valid contract or economic expectancy with Gold's, Inc. for rights to a Gold's Gym franchise," and that defendant Engle and others "knew of the contract between Gold's, Inc. and [Members] . . . ." Members also alleged that the various defendants' "actions caused interference with the contract or economic expectancy between [Members] and Gold's, Inc. and caused damage to [Members] by depriving them of their franchise rights in Gold's Gym St. George . . . ."

[3] Gold's Gym did succeed in having the breach of contract and negligence claims dismissed on statute of limitation grounds.

would require [the LLC] to be named a Plaintiff." The court based this on two lines of thought.

¶14 First, the district court found guidance in *Aurora Credit Services, Inc. v. Liberty West Development, Inc.*, 970 P.2d 1273 (Utah 1998). In that case, we reasoned that "the rationale for requiring an action to proceed derivatively is often absent in a closely held corporation," and held that "a court may allow a minority shareholder in a closely held corporation to proceed directly against corporate officers." *Id.* at 1280–81. The district court interpreted *Aurora* to mean that "derivative actions may not be required where the corporation is closely held with a limited number of principals."[4]

¶15 Second, the district court stated that Gold's Gym did not "cite authority requiring a derivative suit for claims against a party who is not the primary corporation." But the district court did not use this rationale to conclude that Members could not assert the claims. Rather, it permitted the claims to go forward without any additional explanation about why it believed this to be an appropriate course of action.

¶16 Thus, the district court appears to have either: (1) viewed the claims arising out of the License Agreement as derivative claims that Members could assert directly against Gold's Gym under a closely held corporation exception; or (2) believed that a limited liability company's members can directly assert claims against a third party that arise out of a contract between that third party and the LLC. Either way, the district court did not require Members to follow the procedures in place for plaintiffs who wish to assert derivative claims and allowed the claims to proceed to trial.[5]

---

[4] Although *Aurora* remains good law, we have called its holding into doubt stating that, "[f]rom our vantage point eight years after *Aurora*, we can see that our proclamation of a 'growing trend' in recognizing an exception to the derivative action rule for closely held corporations may have overstated matters." *Dansie v. City of Herriman*, 2006 UT 23, ¶ 16, 134 P.3d 1139.

[5] There are statutory requirements for a member of a limited liability company to bring a derivative action to enforce a right of that entity. For example, with a few exceptions, the member must demand that the entity bring the action, UTAH CODE § 48-3a-802, have been a member when the alleged misconduct occurred and currently be a member, *id.* § 48-3a-803, plead the date and content of

(continued . . .)

¶17 We have misgivings about the district court's holding. But Gold's Gym—understandably because it prevailed at trial—has not appealed the denial of its summary judgment motion.[6]

¶18 Following a bench trial, the district court found that Members had failed to prove their claims against Gold's Gym. Gold's Gym then moved for attorney fees based on the attorney fees provision in the License Agreement. Gold's Gym asserted that it was the prevailing party and that the claims Members asserted arose out of or related to the License Agreement. Members responded that, because they were not parties to the License Agreement, the attorney fees clause does not apply to them.

¶19 In its reply, Gold's Gym offered two arguments to explain why Members, who never signed the License Agreement, were nonetheless liable for fees. First, Gold's Gym argued that because Members brought the claims directly on behalf of the LLC, they claimed to be entitled to the benefit of the License Agreement. Gold's Gym argued that if they claimed the benefit of the agreement, Members must also accept its burdens, including the attorney fees clause. Second, Gold's Gym argued that Members are estopped from arguing that they are not bound by the fee provision because they insisted that their claims were brought on behalf of the LLC.

¶20 The district court denied Gold's Gym's motion, finding that Gold's Gym was not entitled to fees because Members were not parties to the contract and that all the claims did not arise out of or relate to the License Agreement. Gold's Gym appealed.

¶21 In its opening brief to this court, Gold's Gym asked us to decide that the claims Members asserted were derivative claims. Building on this assertion, Gold's Gym argued that the Members were then liable for fees because they brought derivative claims. In support of this, Gold's Gym pointed to the substantial benefit doctrine. This doctrine generally allows derivative plaintiffs to recover their fees if they confer a substantial benefit on the entity by

_____

the member's demand on the entity and the entity's response, *id.* § 48-3a-804, and remit any proceeds or benefits of the action to the entity, *id.* § 48-3a-806.

[6] We can review the denial of a summary judgment ruling after a trial in certain circumstances. *See, e.g.*, *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 7, 215 P.3d 152. We do not do so here because no party asked us to overturn the summary judgment ruling.

bringing the action. *See LeVanger v. Highland Estates Props. Owners Ass'n Inc.*, 2003 UT App 377, ¶ 20–22, 80 P.3d. 569; *D'Amico v. Bd. of Med. Exam'rs*, 520 P.2d 10, 28 (Cal. 1974) ("[W]hen a class action or corporate derivative action results in the conferral of substantial benefits . . . upon the defendant in such an action, that defendant may, in the exercise of the court's equitable discretion, be required to yield some of those benefits in the form of an award of attorneys fees."); *accord Guild, Hagen & Clark, Ltd. v. First Nat'l Bank of Nev.*, 600 P.2d 238 (Nev. 1979).

¶22 Gold's Gym also made assorted references to Members having to assume both the rights and obligations of the contract, to Utah's reciprocal attorney fees provision, as well as to the fact that Members signed personal guaranties on the License Agreement.

¶23 Members countered that Gold's Gym's appellate arguments were not preserved. Members noted that in support of its motion for fees in the district court Gold's Gym argued: (1) that because Members attempted to obtain the benefits of the License Agreement, they should be saddled with its burdens; and (2) that Members are estopped from claiming that the License Agreement's attorney fees clause does not apply to them. Members argued that Gold's Gym had changed its tune on appeal by asserting that Members' claims are derivative and that a derivative plaintiff who asserts a corporation's rights under a contract against a third party should be personally bound by the attorney fees provision in that agreement.

¶24 In reply, Gold's Gym asserted that its arguments on appeal are the same it made in the district court. It pointed to language in its reply memorandum below and stray language in its opening appellate brief, both of which refer to the general idea that a party "cannot escape the obligations of the contract . . . particularly when [they have] used the contract's benefits to its advantages and as a sword throughout the litigation."

¶25 Following oral argument, we remanded to the district court. We asked the district court to shed light on its rulings regarding Members' standing to bring the claims in this case and whether it had concluded that Members' claims were derivative. The district court, however, was now occupied by a different judge than the one who had ruled on summary judgment. In response to the remand order, the district court noted that it had merely incorporated the prior judge's ruling on summary judgment. The district court averred that it had no recollection of having re-examined the issue on the record. Thus, we were left with little to help us understand the reasoning behind the summary judgment ruling.

¶26 After receiving the response to the remand order, we ordered supplemental briefing from the parties on several questions. We asked the parties for their understandings of the district court's ruling, its effects, and the law it relied on.

¶27 We also asked under what circumstances a non-party has been, or should be, required to pay attorney fees after it unsuccessfully tries to enforce a contract. And we asked the parties to supplement their arguments on the question of when courts have required those who assert the benefits of a contract to be bound by the contract's terms.

¶28  In response to these questions, Gold's Gym urged this court to apply the principle of nonsignatory estoppel. Members contended that this was a new argument that had neither been raised below nor in the initial appellate brief.

## STANDARD OF REVIEW

¶29 Gold's Gym advances a number of arguments aimed at demonstrating that the law provides a path for a successful litigant to recover attorney fees from an opponent, even where no contract exists between the parties and no statute authorizes the recovery. Whether Utah law recognizes such a path presents a question of law we review for correctness. *See Cent. Utah Water Conservancy Dist. v. Upper E. Union Irrigation Co.*, 2013 UT 67, ¶ 27, 321 P.3d 1113 (holding that whether a contract can be enforced against a party notwithstanding impracticability arguments is a question of law reviewed for correctness).

## ANALYSIS

¶30 In its opening brief, Gold's Gym appears to offer four reasons why Members might be liable for fees under the License Agreement. First, Gold's Gym argues that this is a derivative action, and under the substantial benefit doctrine, derivative plaintiffs like Members must pay fees if they lose the litigation. Second, Gold's Gym asserts that a nonsignator to a contract, who asserts rights under that contract, must also accept all the burdens the contract imposes. Third, Gold's Gym highlights that under Utah's reciprocal attorney fees statute, a court may award fees when the contract allows at least one party to recover fees. And fourth, Gold's Gym notes that Members signed a personal guaranty that holds them liable for some costs and fees. In supplemental briefing, Gold's Gym also argues that nonsignatory estoppel provides a basis for this court to find that Members are bound by the License Agreement's attorney

fees clause.[7] None of these arguments allows us to overturn the district court's determination to deny Gold's Gym its fees.[8]

¶31 First, Gold's Gym argues that "[p]ursuant to the 'substantial benefit' doctrine, . . . the Members must pay attorney fees." The substantial benefit doctrine generally grants attorney fees to

---

[7] As a threshold matter, Gold's Gym asks us to determine that the claims Members brought were derivative claims. This would require us to revisit and opine on the district court's summary judgment ruling that Members had standing to bring these claims as individuals. But the district court's ruling is not entirely clear and subject to various potential readings.

The ruling might be read to say that the claims were direct. Or the district court might have held that even though the claims were derivative, Members could proceed without following *procedures* for derivative claims under the closely held corporation exception we recognized in *Aurora Credit Services, Inc. v. Liberty West Development, Inc.*, 970 P.2d 1273 (Utah 1998). The district court's decision also implicates questions this court has not yet had an opportunity to address. For example, whether the closely held corporation exception extends to limited liability companies.

In an effort to say something meaningful on this topic, we scoured the trial record. We remanded to the district court and asked the district court to explain the basis of the ruling. We then asked the parties for their understandings of what the district court meant in the summary judgment ruling. All was to no avail. We still are not sure what the district court held and why it held it. And we are concerned that on the record before us, any attempt to say something beneficial will ultimately have the opposite effect.

Fortunately, we need not interpret the district court's order to resolve this matter. Gold's Gym has not asked us to overturn the summary judgment ruling, and even if we credit Gold's Gym's argument that Members' claims were derivative, Gold's Gym's arguments for fees fail.

[8] On appeal, Gold's Gym also makes several arguments for why the costs and fees it incurred in this case fall within the scope of the License Agreement's attorney fees provision. Because we are not persuaded that the district court erred by concluding that Members are not subject to the attorney fees provision, we need not decide whether Members' claims would have been subject to the attorney fees provision.

derivative plaintiffs who succeed in the action and confer a substantial benefit on the entity on whose behalf they sued. The Utah Legislature has incorporated this principle into Utah law. Utah's Revised Uniform Limited Liability Company Act states that "[i]f a derivative action is successful in whole or in part, the court may award the plaintiff reasonable expenses, including reasonable attorney's fees and costs, from the recovery of the limited liability company." UTAH CODE § 48-3a-806(2); *see also supra*, ¶ 21.

¶32  In both its common law and statutory forms, the substantial benefit doctrine contemplates a court awarding fees to a derivative plaintiff who prevails and obtains a recovery for the company in whose name she sued. Gold's Gym has offered no authority or reasoning to extend the substantial benefit principle to a defendant who prevails against derivative plaintiffs. Thus, even if we credit Gold's Gym's argument that Members asserted derivative claims, we are not convinced that the substantial benefit doctrine provides a basis for a fee award.

¶33 Next, Gold's Gym states that Members "cannot use litigation as a sword when it is advantageous but then utilize it as a shield to avoid fees." Gold's Gym continues that "[b]ecause the Members elected to sue Gold's Gym on behalf of [the LLC] . . . Members assumed all the risks and obligations thereunder."

¶34 Members assert that this argument was unpreserved. In response, Gold's Gym argues that it made this argument to the district court. And it supports this contention with a cut and pasted block quote from its reply memorandum in support of its motion for fees that it had filed in the district court. The block quote suggests that the few sentences it offered in its opening brief do echo an argument Gold's Gym made to the district court. But even if we could find the argument preserved, we would be hard pressed to conclude that it had been adequately briefed before us.

¶35 The block quote in Gold's Gym's reply brief hints at case law that it presented to the district court. But it is hidden from us with a well-placed "citation omitted." In other words, Gold's Gym has given us no authority for the propositions it asserts. This is a hard way for a party to meet its burden of persuasion. As we have stated, "[a] party may not simply point toward a pile of sand and expect the court to build a castle. In both district and appellate courts, the development of an argument is a party's responsibility, not a judicial duty." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248.

¶36 However, even if we were in the business of searching district court filings for arguments that are alluded to on appeal, we would reach the same result. This is because we are not convinced that authority supports Gold's Gym's general assertion that in all circumstances a nonsignator suing on a contract assumes all the risks and obligations thereunder.

¶37 In the district court, Gold's Gym cited a Utah court of appeals case, *Richardson v. Rupper*, 2014 UT App 11, ¶ 11, 318 P.3d 1218, which stated that "[a] party cannot accept the benefits of a contract and reject its burdens." *Richardson*, however, dealt with a party seeking to avoid the burdens of contracts *that it had signed*. *See id.* ¶ 10. Another case Gold's Gym cited to the district court—*Francisconi, v. Hall*, 2008 UT App 166, No. 20070331-CA, 2008 WL 1971336 (Utah Ct. App. May 8, 2008)—fails to persuade for the same reason. Simply stated, neither case deals with nonsignators nor supports the proposition Gold's Gym advances.

¶38 Another case Gold's Gym cited below—but again, not to us—is also distinguishable. In *Prudential Federal Savings & Loan Association v. Hartford Accident & Indemnity Company*, the petitioner claimed it was not bound by a supplemental agreement that it did not sign, which modified an original contract to which it was a party. 325 P.2d 899, 903 (Utah 1958). The court found that the petitioner became party to the supplemental agreement by expressly agreeing to portions of that agreement, by not limiting its assent to only certain provisions, and by accepting the benefits of the agreement. *Id.* Gold's Gym has not explained how this case supports a general rule that a party cannot accept the benefits of the contract and reject the burdens. Accepting the benefits of the contract was only one part of why the court found the petitioner bound by the supplemental contract. More importantly, the petitioner had also "expressly agreed" to portions of the contract, *id.*, something Members did not do here.

¶39 Simply stated, the cases Gold's Gym cited to the district court do not establish the general rule Gold's Gym advocates. Gold's Gym may offer inapposite cases because Gold's Gym overstates the general principle. We, and other courts, have recognized instances where a nonsignator can assert rights in a contract. For example, we allow assignees, third-party beneficiaries, and those who benefit from a subrogation to assert rights in a contract to which they are not a signator. But only in some of these instances will the nonsignator be liable for the burdens of the contract. For example, assignees are not automatically liable for all burdens of the contract under which

they assert rights. *See, e.g., Radley v. Smith*, 313 P.2d 465, 466 (Utah 1957) ("[I]t is no doubt possible for a party to become the assignee of the rights under a contract without becoming responsible for the duties," and "the question whether a purported assignment of an entire contract includes such assumption depends upon its terms and the intent of the parties."); *accord Sans Souci v. Div. of Fla. Land Sales & Condos.*, 448 So. 2d 1116, 1120 (Fla. Dist. Ct. App. 1984); *McDaniel Bros. Constr. Co. v. Burk-Hallman Co.*, 175 So. 2d 603, 605 (Miss. 1965); *Cuchine v. H.O. Bell, Inc.*, 682 P.2d 723, 725 (Mont. 1984). Rather, the court inquires into the intent of the parties to determine for which liabilities the nonsignatory party is responsible.

¶40  That having been said, there may well be a certain subset of claims where a nonsignator asserting rights under a contract is on the hook for its burdens as well. But Gold's Gym has not provided us with authority or reasoning for why plaintiffs who bring unsuccessful derivative actions would be in this subset.

¶41  Gold's Gym next argues that "[a] court may also award costs and attorneys' fees based upon a written contract when the provisions of the contract 'allow at least one party to recover.'" Gold's Gym supports this argument with a reference to Utah's reciprocal fee statute. Utah Code section 78B-5-826 states that a court "may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing . . . when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees." However, Gold's Gym says nothing more about it. And this issue was never raised in the district court. As we have explained, "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue . . . ." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443.

¶42  The reciprocal fee statute may well be the way Utah law has handled the policy concerns underlying Gold's Gym's contentions.[9]

---

[9] Indeed, this court has interpreted Utah Code section 78B-5-826 in a way that, at least at first blush, seems to help resolve instances where a plaintiff asserts rights under a contract containing a fees provision and then seeks to avoid the provision when she loses the suit. In *Hooban v. Unicity International, Inc.*, a defendant succeeded in defeating claims based on a contract by showing that the plaintiff was a stranger to the contract. 2012 UT 40, ¶ 7, 285 P.3d 766. The

(continued . . .)

But this argument was never developed, and more importantly, was never presented to the district court. Because the reciprocal attorney fee statute argument was not preserved, we will not consider it. *See id.* ¶ 15.

¶43 Gold's Gym next argues that Members signed a personal guaranty that provides a basis for Gold's Gym to recover its attorney fees. But Gold's Gym never raised this argument before the district court. As with the argument based on the reciprocal fee statute, we will not consider an unpreserved argument. *See id.*

¶44 Additionally, after briefing and oral arguments, we asked the parties for supplemental briefing. In large part, we asked the parties to help us understand the district court's ruling on standing. But we also offered the parties an opportunity to elucidate some of the arguments made in Gold's Gym's opening brief. We asked whether the general assertion Gold's Gym advances about a non-party accepting the benefits of a contract had ever been applied to require a non-party to pay attorney fees, and if not, whether it should be extended to that situation. We also asked for support for

---

defendant then moved for attorney fees based on the contract, but the plaintiff argued it was not a party to the contract. *Id.* ¶¶ 7, 23. This court held that the reciprocal attorney fees statute still applied. *Id.* ¶ 31. We reasoned that the correct inquiry under the statute was "whether the contract would allow at least one party to recover fees in the hypothetical alternative scenario in which the opposing party prevailed." *Id.* ¶ 29. Had the plaintiff in *Hooban* been successful on its claims to enforce the contract, it would have been entitled to attorney fees under the provision. *Id.* ¶¶ 25–26. Thus, the statute allowed the successful defendant to collect contractual attorney fees.

On the other hand, this case differs from *Hooban* in ways that could be meaningful. While Members had at first claimed to have entered into the agreement with Gold's Gym, by trial they made clear that it was the LLC that was party to the agreement. Members also argued that at least some of the claims they raised were not based on the contract. And Gold's Gym prevailed on the claims on the merits. It did not, as the party in *Hooban*, demonstrate that the contract was unenforceable against it. We are not certain if, or to what extent, these distinctions would affect the applicability of section 78B-5-826 to the situation here. But because it was neither preserved nor adequately briefed, we need not sort this out to resolve this case.

Gold's Gym's related contention that if a plaintiff attempts to step into the shoes of a party to a contract, the plaintiff can be liable for fees.

¶45  In response, Gold's Gym argues that this court should adopt the principle of nonsignatory estoppel and hold that Members are liable for fees. While we have never formally adopted that principle, we have suggested that it might be used to require a nonsignator to arbitrate when the contract it seeks to enforce contains an arbitration provision. *See Ellsworth v. Am. Arbitration Ass'n*, 2006 UT 77, ¶ 19 & n.11, 148 P.3d 983.

¶46  However, Gold's Gym never asked the district court to rule on nonsignatory estoppel. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]. To provide the court with this opportunity, the issue must be specifically raised . . . and must be supported by evidence and relevant legal authority." *Johnson*, 2017 UT 76, ¶ 15 (alteration in original) (citations omitted) (internal quotation marks omitted). Because the district court was not asked to apply this principle, we do not consider it on appeal. *See id.*

¶47  Finally, Gold's Gym asserts that instances like assignment and subrogation involve a party "stepping into the shoes of another." Gold's Gym also uses this as an opportunity to make a new argument that the district court, "in effect," treated Members as if they were assignees of the claims. And Gold's Gym argues that an assignee accepts both the benefits and burdens of a contract. As noted above, an assignee of a right is not automatically liable for all the assignor's burdens in that contract. *Supra* ¶ 39. Gold's Gym has not convinced this court that a party "stepping into the shoes" of another, without more, automatically means that party would be liable for contractual attorney fees.

## CONCLUSION

¶48 We appreciate that this has been a painful road for the parties and can understand Gold's Gym's desire to vindicate its victory with an award of attorney fees. And we can see that the district court's summary judgment ruling promoted an environment that allowed Members to make claims that morphed in frustrating and sometimes contradictory ways. But Gold's Gym bears the burden of establishing that it is entitled to obtain attorney fees from parties with whom it has no contract. Gold's Gym has not persuaded us that the district court erred in denying the motion for attorney fees. We affirm.

––––––––––