2023 UT App 71

## THE UTAH COURT OF APPEALS

ROCKWELL TRANSPORT LLC AND THERON BRIGGS,
Appellants,
*v.*
SAM T. HOOPER, RONALD R. HUNT, AARON SANDERS,
AND ROCKWELL TRANSPORT MANAGEMENT LLC,
Appellees.

Opinion
No. 20210566-CA
Filed July 6, 2023

Third District Court, Salt Lake Department
The Honorable Kent R. Holmberg
No. 180902499

Brett W. Hastings, Attorney for Appellants

Troy L. Booher, Caroline A. Olsen, and
David W. Scofield, Attorneys for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

OLIVER, Judge:

¶1      Theron Briggs, a member of Rockwell Transport LLC (Rockwell), brought direct and derivative claims against the other members and the new LLC they formed without him. A special litigation committee (the SLC) investigated the derivative claims, and the district court enforced the SLC's determination to settle the conversion claim and dismiss the remaining derivative claims. The court also granted summary judgment in favor of the defendants on Briggs's direct claims and denied both sides' requests for attorney fees. Briggs now appeals these rulings. We affirm in part and remand the matter with instruction.

BACKGROUND

¶2    In April 2012, Briggs, Sam Hooper, and Ronald Hunt created Rockwell, a hauling service for "large shipments of commodities, such as oil and fuel," in the Uintah Basin. Hooper and Hunt provided financial support for Rockwell and each held a forty-six percent ownership interest; Briggs contributed his considerable experience in the trucking industry and held an eight-percent ownership interest. In 2014, Briggs resigned as the trucking manager of Rockwell but maintained his eight-percent ownership interest. Rockwell was initially profitable, but during 2015 and 2016, it experienced a significant drop in revenue when oil prices fell. In June 2016, Hooper and Hunt hired Aaron Sanders to replace Briggs as the trucking manager and gave him an ownership interest, taken equally from their shares. Five months later, Hooper, Hunt, and Sanders transferred Rockwell's assets to a new company they formed called Rockwell Transport Management LLC (RTM). Briggs held no ownership interest in RTM.

¶3    In 2018, Briggs and Rockwell filed a complaint against Hooper, Hunt, Sanders, and RTM (collectively Defendants), alleging both direct and derivative claims on behalf of Rockwell. Specifically, Plaintiffs alleged seven direct and derivative causes of action: (1) breach of the operating agreement related to capital contributions (derivative and direct), (2) breach of the operating agreement related to distributions (derivative and direct), (3) breach of fiduciary duty (derivative and direct), (4) breach of Utah Code section 48-3a-404 related to distributions among LLC members (direct), (5) breach of Utah Code section 48-3a-410 related to information-sharing among LLC members (direct), (6) conversion (derivative and direct), and (7) accounting

(derivative and direct). Defendants answered and asserted eight counterclaims against Briggs.[1]

¶4      Defendants exercised their statutory right to request creation of a special litigation committee to investigate Briggs's derivative claims. *See* Utah Code § 48-3a-805 ("If a limited liability company is named as or made a party in a derivative proceeding, the limited liability company may appoint a special litigation committee to investigate the claims asserted in the proceeding and determine whether pursuing the action is in the best interests of the limited liability company."). Rockwell appointed a certified public accountant (Accountant) who has extensive experience in investigative accounting, receiverships, and bankruptcy to serve as the SLC.[2]

¶5      In the report and statement of determination, the SLC, with the assistance of special litigation counsel, concluded that Defendants had committed the tort of conversion when they transferred Rockwell's assets to RTM. The SLC valued Rockwell's assets at the time of conversion at $212,000 and recommended that the derivative claim associated with the conversion be "resolved by payment to [Rockwell] of the required amount—here, $212,000." The SLC stated that because Rockwell was no longer operating, the "appropriate result could be obtained simply by netting out [Defendants'] interest and requiring payment to [Briggs] by [Defendants] of $17,000 (eight percent of $212,000)." The SLC also recommended that "the derivative claims based on the alleged failure to provide initial capital contributions" be

---

1. Defendants' counterclaims were ultimately dismissed, and that decision is not at issue in this appeal.

2. The statute requires a special litigation committee to be composed of "one or more disinterested and independent individuals." Utah Code § 48-3a-805(2). Here, the SLC was composed of a single person, Accountant.

dismissed, along with the accounting claim "to the extent" it was derivative.

¶6 Defendants then moved to enforce the SLC's determination on Briggs's derivative claims and for summary judgment on Briggs's direct claims. At a hearing on the motions, both parties agreed the SLC met the statutory qualification requirements, but Briggs argued the SLC "did not exercise reasonable care in evaluating all the claims." The district court deferred ruling on Defendants' motion to enforce pending an evidentiary hearing on the narrow issue of whether the SLC exercised reasonable care in its investigation.

¶7 The district court, however, granted summary judgment to Defendants on all of Briggs's direct claims based on Briggs's failure to produce "any affirmative evidence of direct and individual damages to him as opposed to Rockwell." The court rejected Briggs's contention that his failure to produce such evidence was justified because he did not have access to RTM's records, stating that Briggs "has not cited any legal authority to support his notion that as a non-member of this new limited liability company, he would have some right to view its financial records or receive an accounting" and "has not moved for a continuance to conduct additional discovery under Rule 56(d)."

¶8 At the evidentiary hearing on the SLC's investigation, Accountant explained that he had considered interest on the conversion claim and, after consulting with legal counsel for the SLC, determined not to include interest. The court then ruled it would enforce the SLC's determination, specifically finding that the SLC was "disinterested and independent" and had made its "recommendation in good faith, independently and with reasonable care."

¶9 The court also held a hearing to consider whether attorney fees should be awarded to any party and whether interest should

be added to the $212,000 settlement. Briggs based his request for attorney fees on three grounds: (1) Utah's "substantial benefit" doctrine, (2) Utah Code section 48-3a-806(2) (stating that "[i]f a derivative action is successful in whole or in part, the court may award the plaintiff reasonable expenses, including reasonable attorney's fees and costs, from the recovery of the limited liability company"), and (3) Rockwell's operating agreement, which states that "[i]n the event that any action is filed in relation to this Agreement, the unsuccessful party shall pay to the successful party, as a part of any judgment or settlement, a reasonable sum for the other party's attorney's fees." Briggs, arguing that he and Rockwell were "the only parties that have received any judgment," requested $47,060 in attorney fees and $2,367.77 in costs, for a total of $49,427.77. Defendants contended that Briggs could not be considered a prevailing party because his direct claims were dismissed and the $212,000 awarded to Rockwell was "not a win for Mr. Briggs" because it represented a settlement amount, not a judgment. In response, Briggs urged the court to use "common sense" and a "flexible and reasoned approach" to determine which party prevailed.

¶10     A week later, the district court issued its written ruling and denied both sides' fee requests and the request for interest. On the issue of attorney fees, the court concluded that "this case presents what a true draw would look like" because "neither side achieved their optimal outcome and their claims of victory ring hollow given the procedural course that this action has taken and the final Order that was entered." The court was referring to the fact that although Briggs won a $212,000 judgment for Rockwell, he also diminished that award by "protracting the litigation." Likewise, although Defendants succeeded in having all of Briggs's direct claims dismissed, they had to pay a judgment to Rockwell on one of Briggs's derivative claims. On the issue of interest, the court concluded that Briggs did not meet his "burden of proof in establishing a right to interest either under a theory of

prejudgment interest or as an inherent part of the conversion claim."

## ISSUES AND STANDARDS OF REVIEW

¶11 Plaintiffs now appeal, raising three issues for our review. First, Briggs challenges the district court's dismissal of his direct claims. When claims are "dismissed on the merits, as a matter of law on summary judgment, we review the district court's decision for correctness, affording it no deference." *Chard v. Chard*, 2019 UT App 209, ¶ 30, 456 P.3d 776.

¶12 Second, Briggs and Rockwell challenge the district court's denial of interest on the conversion settlement. "A trial court's decision to grant or deny . . . interest presents a question of law which we review for correctness." *Donatelli v. Beaumont*, 2009 UT App 34, ¶ 3, 204 P.3d 201 (cleaned up).

¶13 Third, Briggs challenges the district court's attorney fees ruling, which we review for abuse of discretion. *See Olsen v. Lund*, 2010 UT App 353, ¶ 5, 246 P.3d 521 ("Which party is the prevailing party depends, to a large measure, on the context of each case, and, therefore, it is appropriate to leave this determination to the sound discretion of the trial court." (cleaned up)).

## ANALYSIS

¶14 For the reasons discussed herein, we hold that the court correctly dismissed Briggs's direct claims and correctly denied interest on Rockwell's conversion claim. However, we also hold that because Rockwell was a prevailing party on Briggs's derivative claims, Briggs should have been awarded attorney fees related to that claim, and we remand the matter with instruction for the court to award them.

## I. Direct Claims

¶15    Briggs challenges the district court's grant of summary judgment to Defendants on his direct claims. The court's decision to dismiss those claims rested on Briggs's failure to produce evidence he had sustained individual damages separate and apart from damages he suffered as a member of Rockwell.

¶16    A plaintiff can "withstand summary judgment only if it provided evidence of both the fact and the amount of damages." *Stevens-Henager Coll. v. Eagle Gate Coll.*, 2011 UT App 37, ¶ 23, 248 P.3d 1025; *see also Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 62, 201 P.3d 966 (affirming summary judgment for the defendant where the plaintiff failed to provide sufficient evidence that he suffered damages). "To establish the fact of damages, the evidence must give rise to a reasonable probability that the plaintiff suffered damage." *Sleepy Holdings LLC v. Mountain W. Title*, 2016 UT App 62, ¶ 13, 370 P.3d 963 (cleaned up). To establish the amount of damages, a party must present "evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *Id.* (cleaned up). For Briggs to show the fact of damages, he had to provide evidence of "an injury to himself that is distinct from that suffered by the corporation." *Torian v. Craig*, 2012 UT 63, ¶ 16, 289 P.3d 479 (cleaned up).

¶17    Here, the district court correctly concluded that Briggs "has not presented sufficient evidence of damages to overcome a summary judgment motion." The only evidence of individual damages produced by Briggs was set forth in his initial damages disclosure. In the disclosure, Briggs merely referenced his complaint, stating that he "seek[s] recovery of damages for the breaches and other improper acts of Defendants, as pled in the First Amended Complaint," and claiming that "a computation of such damages will not be possible without further discovery."

Briggs never supplemented his disclosure, nor did he produce any evidence of his individual damages.

¶18 Briggs cannot merely reference his complaint or aver that his failure to disclose damages was justified because of Defendants' failure to provide discovery or an accounting.[3] A plaintiff who complains of insufficient discovery as justification for a failure to prove damages should invoke rule 56(d) of the Utah Rules of Civil Procedure, which allows a party to move for a continuance to conduct additional discovery: "If a nonmoving party shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Utah R. Civ. P. 56(d). But Briggs failed to move for a continuance to conduct additional discovery under this rule. As the district court noted, "even if Briggs had an incomplete financial picture of Rockwell, the fact of damages . . . and the method for calculating the amount of damages must be apparent in initial disclosures" and "[i]f the facts underlying the amount of damages remained unclear, the burden was on Briggs to further investigate or conduct discovery and to do so as early in the litigation process as is practicable." *See Stevens-Henager Coll.*, 2011 UT App 37, ¶ 24.

¶19 Accordingly, the court correctly granted summary judgment to Defendants on Briggs's direct claims based on his failure to prove damages.

---

3. As the district court noted, "Briggs has not cited any legal authority to support his notion that as a non-member of this new limited liability company [RTM], he would have some right to view its financial records or to receive an accounting."

II. Interest on the Conversion Claim

¶20    Briggs argues that, as a matter of law, he and Rockwell are entitled to interest on the derivative conversion claim. Because the district court was enforcing a determination by the SLC, we must first look to the governing statute on special litigation committees. Utah Code section 48-3a-805 outlines the authority of both a special litigation committee and the reviewing court. First, the statute states that "[a]fter appropriate investigation" of a derivative claim, a special litigation committee "may determine that it is in the best interests of the limited liability company that the proceeding . . . be settled on terms approved by the committee; or be dismissed." Utah Code § 48-3a-805(4)(c)–(d). The statute then sets forth what happens once a special litigation committee has concluded its investigation, filed the "statement of its determination and its report" with the court, and "serve[d] each party with a copy":

> The court shall determine whether the members of the committee were disinterested and independent and whether the committee conducted its investigation and made its recommendation in good faith, independently, and with reasonable care, with the committee having the burden of proof. If the court finds that the members of the committee were disinterested and independent and that the committee acted in good faith, independently, and with reasonable care, the court shall enforce the determination of the committee.

*Id.* § 48-3a-805(5).

¶21    Here, the parties agreed the SLC had conducted the investigation in good faith and independently, but Briggs disputed whether it was done with reasonable care with respect to the conclusion that Rockwell was not entitled to interest on the

conversion claim. The district court therefore held an evidentiary hearing on the issue of whether the SLC exercised reasonable care in its investigation.

¶22 At the hearing, Accountant explained that part of his task as the SLC was to "make a recommendation to the Court in terms of a settlement amount." The SLC's two alternative recommendations for settlement of the conversion claim[4] were to have Defendants either pay (1) $212,000 to Rockwell or (2) $17,000 to Briggs as his eight-percent share "because Rockwell is no longer operating."

¶23 The SLC's determination regarding the conversion claim not only included the recommended settlement amount of $212,000, but also included a rejection of interest on that amount. At the evidentiary hearing, Accountant was asked if he had considered whether interest "should have been applied to the $212,000 of conversion damages that [he] calculated." In response, Accountant testified that after consulting with legal counsel for the SLC on the issue, he determined that the conversion damages should not include any interest other than "post-judgment interest after a judgment was entered." According to its authority to "determine that it is in the best interests of the limited liability company" that the dispute "be settled on terms approved by the committee," *see id.* § 48-3a-805(4)(c), the SLC determined those terms did not include interest.

¶24 The court then entered findings, which are not challenged on appeal, that the SLC was "disinterested and independent" and had made the "recommendation in good faith, independently and with reasonable care." After further briefing and oral argument, the court denied the request for interest on the conversion claim

---

4. The SLC also recommended that the remaining derivative claims be dismissed, and Briggs does not challenge that recommendation on appeal.

on the grounds that Briggs had "not met his burden of proof in establishing a right to interest either under a theory of prejudgment interest or as an inherent part of the conversion claim."

¶25   Briggs now challenges that ruling, asserting that the district court should have awarded interest because a conversion claim includes interest from the date of the conversion as a matter of law. We agree with the district court's denial of the request for interest, albeit for a different reason. *Okelberry v. West Daniels Land Ass'n*, 2005 UT App 327, ¶ 11, 120 P.3d 34 ("It is well established that we may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court." (cleaned up)).

¶26   The SLC's determination that Defendants were not required to pay interest on the conversion claim was part of its recommended settlement pursuant to Utah Code section 48-3a-805(4)(c), and neither the district court nor this court is empowered by the statute to review the propriety of that settlement or change its terms. Indeed, the review of a special litigation committee's settlement determination is limited only to whether the committee was "disinterested and independent and whether the committee conducted its investigation and made its recommendation in good faith, independently, and with reasonable care." Utah Code § 48-3a-805(5).

¶27   Once the district court found that the SLC met the statutory conditions, the court was required to "enforce the determination of the committee," which did not include interest on the conversion claim. *See id.* (stating that "the court *shall* enforce the determination of the committee" (emphasis added)). Therefore,

the court correctly denied the request for interest on the conversion claim, and there was no error in the court's decision to enforce the SLC's determination that the conversion claim be settled by payment of $212,000, without interest.

### III. Attorney Fees

¶28     Briggs also appeals the district court's denial of his request for attorney fees on his direct and derivative claims. Specifically, Briggs contends he should have been awarded attorney fees on three grounds: (1) Rockwell's operating agreement, (2) Utah's "substantial benefit" doctrine, and (3) Utah Code section 48-3a-806(2). As explained below, Utah's substantial benefit doctrine has been incorporated into statute, so Briggs's argument rests, more accurately, on two grounds.

¶29     "In Utah, attorney fees are awardable only if authorized by statute or by contract. If provided for by contract, the award of attorney fees is allowed only in accordance with the terms of the contract." *Airstar Corp. v. Keystone Aviation, LLC*, 2022 UT App 73, ¶ 95, 514 P.3d 568 (cleaned up). Rockwell's operating agreement states, in part: "In the event that any action is filed in relation to this Agreement, the unsuccessful party shall pay to the successful party, as a part of any judgment or settlement, a reasonable sum for the other party's attorney's fees." Defendants claim that Rockwell's operating agreement does not provide a basis for Briggs's attorney fees because "Briggs was not a sufficiently successful or prevailing party." We agree. At best, this was a draw for Briggs where all of his direct claims were dismissed by the district court on summary judgment, but where he successfully defended against Defendants' counterclaims. That said, we note the distinction between Briggs's direct claims on his own behalf and Briggs's derivative claims on behalf of Rockwell. Whether Briggs—who obtained a settlement payment of $212,000 to Rockwell on his derivative claims—is a prevailing party on the

derivative claims presents a closer call and requires us to look to the statute for guidance.

¶30 Our supreme court has explained that the statute governing attorney fees in cases involving derivative claims stems from Utah's "substantial benefit" doctrine, which "generally grants attorney fees to derivative plaintiffs who succeed in the action and confer a substantial benefit on the entity on whose behalf they sued." *Gold's Gym Int'l, Inc. v. Chamberlain*, 2020 UT 20, ¶ 31, 471 P.3d 170. "The Utah Legislature has incorporated this principle into . . . Utah's Revised Uniform Limited Liability Company Act [which] states that 'if a derivative action is successful in whole or in part, the court may award the plaintiff reasonable expenses, including reasonable attorney's fees and costs, from the recovery of the limited liability company.'" *Id.* (quoting Utah Code § 48-3a-806(2)).

¶31 In close cases, the "focus is on which party had attained a comparative victory, considering what a total victory would have meant for each party and what a true draw would look like." *Fisher v. Davidhizar*, 2021 UT App 38, ¶ 30, 491 P.3d 110 (cleaned up). Here, the district court concluded this case amounts to "a true draw" because "neither side achieved their optimal outcome," their "claims of victory ring hollow given the procedural course," and "neither side prevailed sufficiently to justify an award of fees." On the one hand, Briggs obtained a $212,000 settlement[5] for Rockwell on his derivative claim for conversion, but on the other hand, Defendants were granted summary judgment on his other derivative claims.

---

5. Defendants contend that "Briggs cannot be considered a prevailing party with a judgment in his favor" because the $212,000 was a settlement, not a judgment. We disagree. Utah Code section 48-3a-806(2) authorizes attorney fees "[i]f a derivative action is successful in whole or in part."

¶32   This case was submitted as a Tier 2 case, placing the potential damages in the realm of "[m]ore than $50,000 and less than $300,000." *See* Utah R. Civ. P. 26(c)(5); *see also Express Recovery Servs. Inc. v. Olson*, 2017 UT App 71, ¶ 10, 397 P.3d 792 (stating that under the "net judgment rule," "the party in whose favor the net judgment is entered must be considered the prevailing party" but that "the net judgment rule is a starting point [and] the court should also consider common sense factors" (cleaned up)). Although some of the derivative claims were dismissed, Briggs obtained a recovery of $212,000 for Rockwell on the derivative conversion claim, thereby obtaining seventy percent of the maximum amount of $299,999. And comparatively speaking, this resulted in a victory for Briggs on behalf of Rockwell.[6] This "substantial benefit" for Rockwell leads us to the conclusion that Briggs—as a derivative plaintiff for Rockwell—was a prevailing party pursuant to the statute and the district court abused its discretion when it concluded otherwise.

¶33   On remand, however, Briggs must allocate his requested attorney fees between those claims that were successful and those that were unsuccessful. *See Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶¶ 52–57, 56 P.3d 524. "[T]he party must categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees." *Id.* ¶ 56 (cleaned up). "A party who requests an award of attorney fees has the burden of presenting

---

6. Whether "the litigation ultimately proved worthwhile is not the standard for determining the prevailing party for purposes of a fee award. None of our cases weigh the result achieved . . . against the sacrifice in time, trouble, and expense required to attain that result." *Olsen v. Lund*, 2010 UT App 353, ¶ 12, 246 P.3d 521 (cleaned up).

evidence sufficient to support an award." *KB Squared LLC v. Memorial Bldg. LLC*, 2019 UT App 61, ¶ 31, 442 P.3d 1168 (cleaned up). Part of that burden is the allocation of the fees. "In order to recover any attorney fees at all, the prevailing party must apportion or separate out the recoverable fees from the nonrecoverable ones." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 36, 94 P.3d 193.

¶34　This allocation requirement ensures there is sufficient evidence for the district court to consider. *See Jensen v. Sawyers*, 2005 UT 81, ¶ 132, 130 P.3d 325 (stating that failure to allocate fees among successful claims, unsuccessful claims, and claims to which there is no entitlement to attorney fees "makes it difficult, if not impossible, for the trial court to award the moving party fees because there is insufficient evidence to support the award"). Accordingly, on remand Briggs must allocate the attorney fees he seeks, differentiating between fees incurred on the unsuccessful direct and derivative claims and those incurred on the conversion claim that succeeded.

CONCLUSION

¶35　We affirm the rulings of the district court on the interest and direct claims issues. We remand this matter, however, on the issue of attorney fees and instruct the court to reconsider Briggs's fee request after he has satisfied the fee allocation requirements.

────────